Joseph FOSTER, Petitioner,

v.

Nick LUDWICK, Respondent.

No. 01–CV–71090–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 22, 2002.

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

ROSEN, District Judge.

### I. Introduction

This matter is pending before the Court on petitioner Joseph Foster's *pro se* habeas corpus petition under 28 U.S.C. § 2254. On February 21, 1997, a jury in Oakland County, Michigan found Petitioner guilty of possession with intent to deliver less than fifty grams of heroin, MICH. COMP. LAWS § 333.7401(2)(a)(iv), and possession of marijuana, MICH. COMP. LAWS § 333.7403(2)(d). These convictions arose from the execution of a search warrant at 223 Elm Street in Pontiac, Michigan on August 5, 1994.

> On prior occasions, two vehicles owned by [Petitioner] and registered at that address were seen parked in front of the house. On the date in question, only one of [Petitioner's] vehicles was present. The officers decided to wait for [Petitioner's] second vehicle to return. While they waited, they observed a man, later identified as Eddie Otis Williams, exit the house, stand on the porch and then reenter the house several times. [Petitioner] eventually returned, but left

soon after in a car with Williams. The police stopped the car a short distance from the house and detained both men. Williams was released after the police determined he lived in Detroit. Upon searching the residence at 223 Elm, the police found 3.754 grams of heroin, .24 grams of marijuana, several firearms and $1,160 cash. They also found an electronic scale containing a white powder residue, drug packaging material and drug ledgers. Several bills and other items bearing [Petitioner's] name were found inside the house. No evidence was found suggesting anyone, aside from [Petitioner], lived in the house.

*People v. Foster*, No. 210276, 2000 WL 33521075 at **1–2 (Mich.App. Mar.24, 2000).

After the jury convicted Petitioner, he pleaded guilty to being a fourth habitual offender, MICH. COMP. LAWS § 769.12. On March 12, 1997, Petitioner pleaded no contest to two counts of possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f.[1]

The trial court sentenced Petitioner to a term of six to twenty years in prison for the heroin conviction, one year in jail for the marijuana conviction, and fourteen months to fifteen years in prison on each firearm conviction. The sentences for the firearm convictions ran concurrently to each other, but consecutively to the sentences on the narcotics charges.

Petitioner raised his habeas claims in an appeal from his narcotics convictions. The Michigan Court of Appeals affirmed the convictions in an unpublished, *per curiam* opinion. *See Foster*, Mich.Ct.App. No. 210276, 2000 WL 33521075 at *1. Petitioner raised the same claims in an application

for leave to appeal before the Michigan Supreme Court. The supreme court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed...." *People v. Foster*, 463 Mich. 877, 617 N.W.2d 695 (Mich. 2000).

Petitioner filed his habeas petition on May 2, 2001. The grounds for relief read as follows:

I. The charges against defendant must be dismissed as the prosecution violated the Interstate Agreement on Detainers by sending Mr. Foster back to the federal correctional institution before final disposition of the instant charges.

II. The prosecutor denied defendant a fair trial by introducing the contents of defendant's 'resume' under the guise of introducing evidence of residency, and then using it to argue that defendant's previous job as a drug counselor made his crime worse, knowing that a juror had been so unfairly influenced by that information that the trial court dismissed the juror for cause; it was a serious mistake of counsel to have failed to object to the introduction of the resume.

III. Defendant's Fifth Amendment rights were violated when the prosecutor elicited evidence that a federal agent spoke to defendant at the jail where the trial court had granted defendant's motion to suppress his statement because it was in violation of *Miranda v. Arizona.*

IV. Defendant was denied a fair trial where the trial court denied his motion to suppress evidence regarding the search warrant and also declined to order the prosecutor to disclose the

---

1. Before trial, the trial court granted Petitioner's motion to sever these counts from the

narcotics charges.

identity of the confidential informant whose information formed the justification for issuance of the warrant; it was also error to deny the motion to suppress the firearms found during the search.

V. The prosecutor denied defendant a fair trial by numerous improper and unfairly prejudicial comments, including blatant civic duty arguments, remarks denigrating defense counsel and disparaging defendant, and arguments based on information not introduced into the record.

VI. The trial court denied defendant a fair trial by granting the prosecutor's request, over objections, for a special instruction on constructive possession.

VII. The evidence was insufficient to support the conviction of possession with intent to deliver controlled substances.

Respondent urges the Court to deny the habeas petition for the following reasons:

I. Petitioner's first habeas claim asserting that he is entitled to dismissal of the charges against him because the Interstate Agreement on Detainers was violated fails to assert that the determination of the Michigan Court of Appeals is unreasonable.

II. Petitioner's second habeas claim is barred by his procedural default of failing to contemporaneously object to the alleged errors at trial.

III. Petitioners' third habeas claim has no merit because his Fifth Amendment rights have not been violated.

IV. Petitioner's fourth habeas claim fails to demonstrate that the adjudication of this claim by the Michigan Court of Appeals was an unreasonable application of federal law as determined by the Supreme Court of the United States.

V. Petitioner failed to show the misconduct of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of due process.

VI. Petitioner's sixth habeas claim asserting that the trial court failed to properly instruct the jury is not reviewable in a federal habeas proceeding.

VII. Petitioner's seventh habeas claim that there was insufficient evidence is meritless because the Michigan Court of Appeals determination that there was sufficient evidence is not unreasonable.

## II. *Standard of Review*

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495.

## III. *Discussion*

### A. *The Interstate Agreement on Detainers*

Petitioner was convicted and sentenced in federal court following his arrest in this case, and he was a federal prisoner by the time he was tried in state court. He alleges that the prosecution violated Article IV(e) of the Interstate Agreement on Detainers (IAD) by sending him back to federal prison before disposing of the state charges.

The Michigan Court of Appeals concluded on the basis of state decisions that the IAD did not apply because Petitioner did not notify the prosecutor that he wanted to dispose of the state charges and because the prosecution did not file a detainer. The court of appeals also noted that Petitioner's transfer out of federal prison did not frustrate the purpose of the IAD because he had not begun any rehabilitative program in federal prison.

The IAD is an interstate compact, which creates uniform procedures for lodging and executing a detainer, *i.e.,* a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime.

The Agreement provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State. And it seeks to minimize the consequent interruption of the prisoner's ongoing prison term.... Article IV(e) prohibits return of the individual to the sending State before that trial is complete. It says:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) here, such indictment, information, or complaint *shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.* (Emphasis added.)

*Alabama v. Bozeman,* 533 U.S. 146, 148–49, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001).

■ The United States and the State of Michigan are parties to the IAD. *Fex v. Michigan,* 507 U.S. 43, 44, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). However, the United States Court of Appeals for the Sixth Circuit has held that, "in the absence of exceptional circumstances, a claimed violation of Article IV(e) of the IAD is not a fundamental defect which is cognizable under 28 U.S.C. § 2254." *Metheny v. Hamby,* 835 F.2d 672, 675 (6th Cir.1987).

■ Even if Petitioner's claim were cognizable on habeas review, he is not entitled to habeas relief based on the claimed violation. Petitioner did not request resolution of the state court charges in this case, and the Oakland County prosecutor did not lodge a detainer against Petitioner. (Tr. I, at 23). Petitioner was transferred from a federal facility in Milan, Michigan to Oakland County for trial pursuant to a writ of habeas corpus *ad prosequendum. Id.* Such a writ issued by a court to authorities in another jurisdiction, directing the pro-

duction of a prisoner for trial on criminal charges, is not a detainer within the meaning of the IAD and does not trigger application of the IAD. *United States v. Mauro,* 436 U.S. 340, 349, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Thus, the decision of the Michigan Court of Appeals was not contrary to, or an unreasonable application of, *Mauro,* and Petitioner is not entitled to habeas relief on the basis of his first claim. 28 U.S.C. § 2254(d)(1).

## B. *The Contents of Petitioner's Resume*

Petitioner's second claim alleges that the prosecutor denied him a fair trial by introducing the contents of Petitioner's resume. The resume indicated that Petitioner was a certified drug counselor and chairperson for Alcoholics Anonymous (AA) with over 250 hours of training and experience. The prosecutor elicited this information from Police Officer Anthony Thomasi (Tr. II, at 105), and she began her closing argument by saying, "You know, it's always disturbing when a member of our society decides to sell drugs to people. But it's even more disturbing when that member of society is actually a drug counselor. The Defendant in this case had that position. He had that position of trust and authority—." (Tr. IV, at 4).

Petitioner contends that the prosecutor introduced his resume under the guise of establishing Petitioner's residence and then used information in the resume to argue that Petitioner's previous job as a drug counselor exacerbated his crime. Petitioner also alleges that the disputed information was irrelevant and inadmissible character evidence. Respondent contends that these arguments are barred from substantive review by Petitioner's failure to object at trial.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986), the Sixth Circuit set forth a four-part test for determining whether a prisoner's constitutional claim is procedurally defaulted and barred from habeas review:

First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction—that is, whether the state courts actually based their decisions on the procedural rule. Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *See id.* A procedural rule is adequate only when it is firmly established and regularly followed at the time it was applied. *See Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir.1998). The rule would be an independent basis for disposition of a case if the state courts actually relied on the procedural bar. *See Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to

review the claim would result in prejudice or a miscarriage of justice. *See Maupin,* 785 F.2d at 138.

*Williams v. Coyle,* 260 F.3d 684, 693 (6th Cir.2001), *petition for cert. denied,* —— U.S. ——, 122 S.Ct. 2635, 153 L.Ed.2d 816 (2002).

■ The state procedural rule in question here is the contemporaneous-objection rule. Defendants in criminal cases must object at trial in order to preserve a claim of prosecutorial misconduct for appellate review. *See People v. Ullah,* 216 Mich. App. 669, 679, 550 N.W.2d 568 (1996) (citing *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557 (1994)). Petitioner violated this rule by not objecting at trial when the prosecutor elicited information about the contents of Petitioner's resume and admitted the resume into evidence as part of the People's Exhibit 4 (Tr. II, at 103–05).[2]

■ The Michigan Court of Appeals enforced the state procedural rule by stating in its opinion that Petitioner's arguments were not preserved for its review because Petitioner failed to object to any alleged improper reference to the resume. The state appellate court's alternative analysis under a miscarriage-of-justice standard does not preclude this Court from concluding that Petitioner's claim is procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Paprocki v. Foltz,* 869 F.2d 281, 285 (6th Cir.1989). Moreover, the Michigan Supreme Court did not set aside the procedural bar and consider Petitioner's defaulted claim on the merits.

The failure to object was an independent and adequate state ground on which the state court could rely, because the contemporaneous-objection rule was firmly established and regularly followed at the time of Petitioner's trial. Therefore, in order to obtain habeas review of his claim, Petitioner must meet the "cause and prejudice" test to excuse his state procedural default.

Petitioner alleges that his trial attorney made the "serious mistake" of failing to object to testimony about the contents of the resume and admission of the resume into evidence. Constitutionally ineffective assistance of counsel is "cause" for a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

An attorney is constitutionally ineffective when the attorney's performance is deficient and the deficient performance prejudices the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. The prejudice prong requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

The Michigan Court of Appeals determined that the result of the proceedings would not have been different if defense counsel had objected to the admission of the resume or testimony about its contents. The court of appeals concluded that

---

2. He did object when the prosecutor referred to Petitioner's job as a drug counselor in her closing argument, but he objected on different grounds. He claimed that there was no evidence that Petitioner was a drug counselor and that the prosecutor was arguing from facts not in evidence. The prosecutor assured the trial court that Petitioner's resume had been placed in evidence. The trial court then cautioned the prosecutor not to get into a civic-responsibility argument. (Tr. IV, at 4–5).

Petitioner's allegation of ineffective assistance of counsel lacked merit.

This Court agrees. The evidence against Petitioner was overwhelming. Therefore, even assuming that defense counsel was remiss for failing to object to admission of the resume or testimony about it, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Petitioner has failed to satisfy the prejudice prong of *Strickland*. Therefore, he has not demonstrated that defense counsel was constitutionally ineffective.

Only ineffective assistance of appellate counsel that rises to the level of a Sixth Amendment violation excuses a procedural default. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir.2002). Because Petitioner has failed to show that defense counsel's assistance rose to the level of a Sixth Amendment violation, his attorney's "serious mistake" does not excuse his state procedural default. The Court need not determine whether Petitioner was prejudiced by the alleged constitutional violation, because he has not shown "cause" for noncompliance with a state procedural rule. *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

The remaining question is whether a miscarriage of justice will occur if the Court declines to review the substantive merits of Petitioner's claim about the resume. The miscarriage-of-justice exception applies when a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Carrier*, 477 U.S. at 496, 106 S.Ct. 2639. The exception does not apply here because Petitioner has not

"support[ed] his allegations of constitutional error with new reliable evidence . . . that was not presented at trial," nor demonstrated that "it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Id.* at 324, 327, 115 S.Ct. 851. Thus, Petitioner's state procedural default of failing to object at trial to the prosecutor's use of Petitioner's resume and the state court's reliance on the error bars habeas review of Petitioner's second claim.

### C. The Fifth Amendment Claim

Petitioner confessed before trial to federal agent Jeff Maggard that the heroin and guns involved in this case belonged to him. The trial court suppressed Petitioner's confession to Maggard on federal constitutional grounds.

Petitioner's third claim is that his Fifth Amendment rights were violated when the prosecutor elicited testimony from Maggard that he spoke to Petitioner in jail. Petitioner contends that the testimony violated his constitutional right to remain silent because the only conclusion the jury could have drawn from Maggard's comment was that Petitioner had either incriminated himself or exercised his right to remain silent.

■ The Fifth Amendment states that "no person shall be . . . compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.[3] A prosecutor may not use a defendant's silence, following arrest and constitutional warnings, as evidence of guilt. *Wainwright v. Greenfield*, 474 U.S. 284, 295, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); *Doyle v. Ohio*, 426 U.S. 610, 611, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Griffin v. California*,

---

**3.** The Fifth Amendment is applicable to the states through the Fourteenth Amendment.

*Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

Maggard's testimony that he talked to Petitioner in jail was a response to the prosecutor's question regarding whether Maggard had observed symptoms of heroin use in Petitioner.[4] Maggard responded, "No, I did not. And I talked to Mr. Foster the next Tuesday at the jail and he seemed to be as calm as he is now." (Tr. III, at 36). Defense counsel moved for a mistrial after asking to have the jury excused. The trial court denied Petitioner's motion on the grounds that the prosecutor did not invite the response and the answer was innocuous.

The Michigan Court of Appeals concluded that the trial court's ruling was proper. The court of appeals noted that "Maggard did not testify to any specific statement made by [Petitioner] and his mere statement that he 'talked to' [Petitioner] did not cause jurors to infer that [Petitioner] refused to talk to the police or confessed to the crimes." *Foster*, Mich.Ct.App. No. 210276, 2000 WL 33521075, at 5.

Petitioner incorrectly assumes that the jury must have concluded from Maggard's remark that he (Petitioner) incriminated himself or exercised his right to remain silent. Maggard made no additional comments about the jailhouse conversation. The jury could have concluded any number of things from Maggard's testimony that he talked to Petitioner in jail. As the trial court observed, Maggard "could have said 'Good morning.' He could have said, 'What's this innocent man doing in jail?'" (Tr. III, at 45).

■ Therefore, the state court's conclusion that no Fifth Amendment violation occurred did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner is not entitled to the writ of habeas corpus on the basis of his third claim.

**D. *The Search Warrant, Confidential Informant, and Denial of Motion to Suppress Evidence of Firearms***

Petitioner's fourth claim attacks the trial court's refusal to compel the prosecutor to produce the confidential informant used in this case and the trial court's ruling on evidentiary issues involving the search warrant and the firearms found at 223 Elm Street.

**1. *The Confidential Informant***

Petitioner alleges that the confidential informant should have been produced because the informant played a key role in his arrest and in the police officers' testimony. The Supreme Court has said that, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [of withholding a confidential informant's identity] must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). However,

no fixed rule with respect to disclosure of an informant's identify is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

---

4. The prosecutor apparently was trying to make the point that Petitioner was trafficking in drugs, not using them.

*Id.* at 62, 77 S.Ct. 623. The Sixth Circuit has interpreted *Roviaro* to mean that

> [t]he Sixth Amendment does not require the government to call every witness competent to testify, including special agents or informants. [*United States v. Moore,* 954 F.2d 379, 381 (6th Cir. 1992)]. If the evidence on which the defendant was convicted was obtained personally by the government agents who did testify, the government is not required to produce the cooperating individual. Mere invocation of the right to compulsory process does not automatically outweigh the public interest protecting confidential informants. 'An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial.' *Id.*

*United States v. Jenkins,* 4 F.3d 1338, 1341 (6th Cir.1993).

The Michigan Court of Appeals correctly observed in this case that,

> no testimony at trial referenced the ... hearsay statements of an informant. At most, Redford Police Officer James Turner testified briefly as to the procedure for obtaining a warrant. He did not testify to anything he was told by an informant, but instead merely answered affirmatively the prosecution's question whether he started to investigate [Petitioner] after he received 'some kind of information that led [him] to believe that [he] should start investigating a—somebody named Joseph Foster at 223 Elm.' Consequently, production of the informant at trial was not 'essential to a fair determination of a cause,' and the trial court acted within its discretion in denying [Petitioner's] request to have the informant produced.

*Foster,* Mich.Ct.App. No. 210276, 2000 WL 33521075 at *6.

■ The state court recognized that the failure to disclose or produce the informant did not deprive Petitioner of a fair trial. Petitioner was convicted on evidence personally obtained by law enforcement officers who testified at trial. Therefore, the state court's conclusion did not result in a decision that was contrary to, or an unreasonable application of, *Roviaro.*

### 2. *The Evidentiary Claims*

The remaining portion of Petitioner's fourth claim concerns evidentiary rulings. Petitioner alleges that the trial court deprived him of a fair trial by denying his motion to suppress the contents of a search warrant and the fact that a search warrant was obtained. Petitioner also alleges that the trial court should have suppressed evidence of the firearms, which were found during a search of 223 Elm Street.

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir.1994). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)(quoting *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)); *see also Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)." *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir.2000), *cert. denied,* 532 U.S. 989, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001).

No due process violation occurred in Petitioner's trial because, as the court of appeals explained, "[t]he fact that the police had a warrant to search the residence at 223 Elm was relevant to explaining how the police were allowed to enter the residence." *Foster,* Mich.Ct.App. No. 210276, 2000 WL 33521075 at *6. In addition,

no testimony at trial referenced the contents of the search warrant. . . . Insofar as [Petitioner] argues that several firearms found inside the residence were erroneously admitted, this argument is likewise meritless. The firearms were relevant to prove [Petitioner] had the intent to distribute the drugs. It was reasonable to infer from the presence of guns in the vicinity of the drugs and packaging material that [Petitioner] possessed the guns to protect his drug operation.

*Id.*

This case is not one of the "extraordinary cases" in which "an error in the application of state rules of evidence r[o]se to the level of a due process violation. . . ." *Schoenberger v. Russell,* 290 F.3d 831, 835–36 (6th Cir.2002) (citing *Seymour,* 224 F.3d at 552). Accordingly, Petitioner is not entitled to the writ of habeas corpus on the basis of his evidentiary claims.

### E. *The Prosecutor*

Petitioner's fifth claim alleges that the prosecutor's closing argument deprived him of a fair trial. Specifically, Petitioner contends that the prosecutor (1) improperly referred to the fact that Petitioner was a drug counselor, (2) argued that the police were not authorized to seize a key to the house where the raid occurred, (3) disparaged defense counsel, and (4) appealed to the social fears and civic obligations of jurors.

### 1. *The References to the Key and to Petitioner as a Drug Counselor*

As previously explained, the prosecutor began her closing argument by stating that it is disturbing when a drug counselor sells drugs. (Tr. IV, at 4). Petitioner contends that this argument was based on his resume, which was never introduced into evidence.

The prosecutor also stated that the police did not seize a key to the house where the raid occurred because the warrant did not authorize them to take the key. (Tr. IV, at 32–34). Petitioner alleges that this argument was based on hearsay and on facts not in evidence.

■ To prevail on his claims of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Byrd v. Collins,* 209 F.3d 486, 529 (6th Cir.2000) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Id.* (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.1997)).

> The Court must consider
>
> the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* (quoting *Pritchett,* 117 F.3d at 964).

The alleged misconduct may have been deliberate, but "[t]he resume was admitted as part of one of the ledgers that was seized from the house. Therefore, the prosecution's complained-of reference to the resume was not, itself, improper." *Foster,* Mich.Ct.App. No. 210276, 2000 WL 33521075 at *6. As for the reference to the contents of the search warrant, "[t]hose statements were a proper response to [Petitioner's] argument that the police's fail-

ure to recover a key to the house indicated they did not conduct a proper investigation." *Id.*, 2000 WL 33521075 at *7 (citations omitted).

■ The prosecutor's remarks were not extensive or so pronounced and persistent that they permeated the entire trial. Moreover, the evidence against Petitioner was overwhelming. The Court concludes that the alleged errors did not infect Petitioner's trial with such unfairness as to make the resulting conviction a denial of due process. Therefore, the state court's conclusion (that the prosecutor's remarks did not deprive Petitioner of a fair trial) did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

### 2. *Disparagement of Defense Counsel and Civic Duty Argument*

Petitioner alleges that the prosecutor disparaged the defense by saying that defense counsel was throwing "red herrings" to the jury and was using smoke screens to mislead them. (Tr. IV, at 34–37, 40). Petitioner contends that the prosecutor appealed to the civic obligations of the jury by claiming that the police did an outstanding investigation and took a drug dealer out of the community. (Tr. IV, at 38).

Petitioner failed to object to these arguments at trial, and the Michigan Court of Appeals declined to review the substantive merits of the claims due to the lack of an objection. The failure to make a contemporaneous objection is an adequate and independent state ground, which bars habeas review of the claims unless petitioner can show "cause and prejudice" or a miscarriage of justice. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. Petitioner has not alleged "cause and prejudice," and the miscarriage-of-justice exception does not apply because Petitioner has not shown that he is actually innocent. Accordingly, habe-

as review of Petitioner's last two claims about the prosecutor are procedurally defaulted and barred from substantive review.

### F. *The Jury Instructions*

Petitioner's sixth claim alleges that the trial court deprived him of a fair trial and due process of law by granting the prosecutor's request for a jury instruction on constructive possession. Petitioner contends that the trial court's jury instruction on constructive possession was deficient in that it omitted to say that a person's mere presence at the location where contraband is found does not constitute constructive possession and that some additional connection between the defendant and the contraband must be shown.

■ The question on habeas review of jury instructions is whether the ailing instructions "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). A federal court may not grant the writ of habeas corpus on the basis that a jury instruction was incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

The trial court gave the following instruction on the meaning of "possession" of a controlled substance:

> [P]ossession means either, one, that the person had actual physical control of the substance, as I do the pen that I'm now holding; or, two, the person had the right to control the substance, even if it's in a different room or a different place. Those are the two.

Possession may be sole, where one person alone possesses the substance. Possession may be joint, where two or more people share the possession.

It's not enough if the Defendant merely knew about the heroin. The Defendant possessed the heroin only is he has control of it or the right to control it, either alone or together with someone else.

Then there's another term that I have to define for you and that's called 'constructive possession.' Members of the jury, I charge you that a person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, the possession may be found even when the Defendant is not the owner of recovered narcotics, okay?

Moreover, possession may be joint with more than one person actually or constructively possessing a controlled substance. Constructive possession exists when the Defendant has the right to exercise control of the controlled substance with a knowledge of its presence.

(Tr. IV, at 53–54).

The Michigan Court of Appeals concluded on review of Petitioner's claim that this instruction was adequate. The court of appeals noted that

[t]he jury was apprised of the difference between actual and constructive possession. The trial court also distinguished between sole and joint possession. Overall, the instructions clearly apprised the jury that it must find that defendant controlled or had a right to control the contraband in order to find him guilty of the charges.

*Foster*, Mich.Ct.App. No. 210276, 2000 WL 33521075 at *7.

As for Petitioner's argument that the trial court failed to instruct on "mere presence," the court of appeals noted that

[t]he evidence indicates [Petitioner] was not present where the drugs were found, but instead was arrested after he and Williams left the house in a car. Therefore, such an instruction was not pertinent to the present case and it was not necessary to include such an instruction. *Id.*

■ The alleged error did not infect the entire trial, such that the resulting conviction violates due process. Accordingly, the state court's conclusions did not result in a decision that was contrary to, or an unreasonable application of, the Supreme Court cases cited above. Petitioner is not entitled to habeas relief on the basis of his sixth claim.

### G. *Sufficiency of the Evidence*

Petitioner's seventh and final claim is that the evidence was insufficient to support his conviction of possession with intent to deliver controlled substances. Petitioner contends that the prosecutor did not prove that Petitioner possessed the contraband. According to Petitioner, it was just as likely that the drugs belonged to Eddie Otis Williams, who was seen at the house and had control over the house. Petitioner contends that the prosecutor failed to prove that Petitioner knew of the controlled substances, exerted dominion and control over the narcotics, and intended to deliver the heroin.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this in-

quiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (internal citation and footnote omitted) (emphasis in original). This standard must be applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16, 99 S.Ct. 2781.

The Michigan Court of Appeals summarized the law on possession and possession with intent to deliver as follows:

To prove possession with intent to deliver less than fifty grams of a controlled substance, the prosecution must show that: (1) the substance in the defendant's control was a controlled substance; (2) the amount of the substance *found weighed less than fifty grams;* (3) the defendant's possession of the substance was unauthorized; (4) the defendant knowingly possessed the substance with an intent to deliver. See *People v. Wolfe,* 440 Mich. 508, 516–517, 489 N.W.2d 748 (1992).... Physical possession is not required to find an individual guilty of possessing a controlled substance. *People v. Fetterley,* 229 Mich.App. 511, 515, 583 N.W.2d 199 (1998). 'Possession may be either actual or constructive, and may be joint as well as exclusive.' *Id.* A defendant may be said to have constructive possession of contraband when the totality of the circumstances indicate a sufficient nexus between the defendant and the contraband. *Wolfe, supra,* at 521, 489 N.W.2d 748. 'The essential question is whether the defendant had dominion or control over the controlled substance.' *Fetterley, supra,* at 515, 583 N.W.2d 199. It is not necessary that an individual own the premises where narcotics are found, or that he be the actual owner of the recovered substance. see *Wolfe, supra* at 520–524, 489 N.W.2d 748. Possession with intent to deliver may be proved by circumstantial evidence and inferences arising therefrom. *Id.* at 526, 489 N.W.2d 748; *Fetterley, supra* at 515, 583 N.W.2d 199.

*Foster,* Mich.Ct.App. No. 210276, 2000 WL 33521075 at **7–8.

The court of appeals then summarized the evidence and analyzed Petitioner's claim in the following manner:

Here, Officer Turner's testimony suggested two vehicles owned by [Petitioner] were registered at 223 Elm, Pontiac, and were the only vehicles seen at the house on a regular basis. The several pieces of evidence bearing [Petitioner's] name that were found inside the house suggested the seized items belonged to [Petitioner]. In particular, the bills addressed to [Petitioner] at 223 Elm, as well as the video card found inside the first-floor bedroom, suggested [Petitioner] lived in the house. Magazines bearing [Petitioner's] name and address and a credit card slip made out to [Petitioner] at 223 Elm were found inside a black, leather bag that contained the eleven packets of heroin. Such evidence suggested [Petitioner] exercised dominion and control over that heroin. The resume found inside one of the ledgers also provided evidence of [Petitioner's] ownership. The several items bearing [Petitioner's] name also suggested that he possessed the additional quantity of heroin in a yellow coin envelope, marijuana that was found in two shoe boxes and the gun found under a bed in the first-floor bedroom. Aside from testi-

mony regarding Williams' presence at the house on the day of the raid, there was no evidence suggesting anyone other than [Petitioner] lived in the house or owned the items found inside.

Actual delivery of narcotics is not required to prove intent to deliver. *Wolfe, supra* at 524, 489 N.W.2d 748. Intent to deliver may be inferred from the quantity of drugs the defendant possesses, the packaging of the narcotics and other circumstances surrounding the arrest. *Id.* In the present case, officers testified that the quantity of heroin found suggested it was part of a drug trafficking operation as opposed to being kept for personal use. The seizure of items such as ledgers documenting drug sales, a scale, a bottle of lactose, bags, gloves and magazines used for packaging, significant amounts of money and guns suggested [Petitioner] intended to sell the heroin. The packaging of part of the heroin into eleven separate packets was also evidence of an intent to deliver. The police did not find paraphernalia that would suggest the occupant of the house possessed the heroin for personal use.

*Id.*

The court of appeals found no merit in Petitioner's claim about Williams' presence at the house. The court noted that the prosecution did not have to disprove every reasonable theory of innocence. The court concluded that,

[d]espite Williams' alleged involvement, the aforementioned evidence, viewed in light most favorable to the prosecution, allowed for the reasonable inference that [Petitioner] exerted dominion and control over the items found inside the house and intended to deliver the heroin that was seized. Therefore, there was

sufficient evidence to find that [Petitioner] committed the charged crimes. *Id.* at **8–9.

The state court's factual determinations are supported by the record and, therefore, are reasonable. 28 U.S.C. § 2254(d)(2). The state court's legal conclusion that the evidence was sufficient to support Petitioner's drug convictions was a reasonable application of *Jackson.* Therefore, Petitioner's final claim lacks merit and does not warrant granting the writ of habeas corpus. 28 U.S.C. § 2254(d)(1).

## IV. *Conclusion*

For all the reasons given above, the Court concludes that Petitioner has failed to show entitlement to relief. Accordingly, the application for the writ of habeas corpus is **DENIED.**

The Court **DECLINES** to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Nor would reasonable jurists find it debatable whether the habeas petition states a valid claim of the denial of a constitutional right and whether the Court's procedural default rulings were correct. *Id.; see Cooey v. Coyle,* 289 F.3d 882, 887 (6th Cir.2002) (indicating that a court "may also reject an issue for appeal if the procedural default doctrine applies").

The standard for issuing a certificate of appealability has a higher threshold than the standard for granting *in forma pauperis* status, which requires showing that the appeal is not frivolous. *United States v. Youngblood,* 116 F.3d 1113, 1115 (5th Cir.1997). Although reasonable jurists would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith, and Petitioner may pro-

ceed *in forma pauperis* on appeal. 28 U.S.C. § 1915(a)(3); Fed. R.App. P. 24(a)(2); *Sweeney v. Smith,* 9 F.Supp.2d 1026, 1027 (E.D.Wis.1998). "Good faith" merely requires showing that the issues are arguable on the merits; it does not require a showing of probable success. *Harkins v. Roberts,* 935 F.Supp. 871, 873 (S.D.Miss.1996) (quoting *Howard v. King,* 707 F.2d 215, 219–220 (5th Cir.1983)).