UNITED STATES of America,
Plaintiff–Appellee,

v.

Andrew McCASKILL, Defendant–
Appellant.

No. 02–1227.

United States Court of Appeals,
Sixth Circuit.

Feb. 19, 2003.

Before NELSON and CLAY, Circuit Judges, and HAYNES, District Judge.[*]

NELSON, Circuit Judge.

Andrew McCaskill was convicted on various charges arising from the negotiation of two stolen and forged checks.[1] In this appeal, Mr. McCaskill argues that the evidence was insufficient to support his convictions; that the indictment was improperly multiplicitous; and that the prosecutor engaged in misconduct that deprived him of a fair trial. Unpersuaded by these arguments, we shall affirm the judgment of conviction.

I

In July of 1999 Mr. McCaskill began doing business as "Exemplar System Solutions." Although Exemplar was a corporation, Mr. McCaskill filed an assumed name certificate under Michigan law attesting that he himself owned, conducted or transacted business under the Exemplar name. The ostensible purpose of the business was to market Canadian-built computers to American schools.

On the same day that he filed the certificate, Mr. McCaskill opened a bank account

---

[*] The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1. The changes were brought under 18 U.S.C. §§ 371, 513, 1344, 1957 and 2314.

for Exemplar System Solutions. He was the only authorized signator on the account.

Two checks totaling $600,000 were soon deposited in the Exemplar account. The first, a $200,000 check deposited in August, was drawn on the account of Lawrence Abstract Company of Cherry Hill, New Jersey. The second, a $400,000 check deposited in September, was drawn on the account of Trident Land Transfer Company, also of Cherry Hill. When his case was before the district court, Mr. McCaskill acknowledged having deposited these checks.[2]

It was later discovered that the checks had been stolen from Lawrence Abstract Company and Trident Land Transfer Company, neither of which had done any business with Exemplar. The signature on each check was forged.

By October 29, 1999, the Exemplar account had been depleted to less than $2400. Dozens of checks were drawn on the account in August, September, and October of 1999. All bore the signature "Andrew McCaskill." Many of the checks were made payable to cash, and these were endorsed by McCaskill as payee. Others of the checks were made payable to McCaskill's brother, Luther McCaskill.

After the theft of the checks was discovered and reported, bank investigators contacted Exemplar. The investigators spoke to Luther McCaskill, who stated that the checks represented the proceeds of a $600,000 loan obtained by Exemplar from a man named George Mattioli. As evidence of the loan, Luther McCaskill provided the investigators with a copy of a promissory note obligating Exemplar to pay George Mattioli $600,000. The note was dated August 4, 1999.

Mr. Mattioli, who died of cancer in October of 1999, had no connection with Lawrence Abstract Company or Trident Land Transfer Company. A member of the Mattioli family who had seen Mr. Mattioli almost daily from July of 1999 until his death never heard him mention a $600,000 loan, the McCaskills, or Exemplar. The same family member testified that, at the time of his death, Mr. Mattioli did not have enough money to pay his bills.

In April of 2000 a federal grand jury indicted Andrew and Luther McCaskill on charges of conspiracy, possession and utterance of forged checks, bank fraud, and interstate transportation of forged checks. In addition, six counts of the indictment charged the defendants with engaging in monetary transactions with criminally derived property of a value greater than $10,000. Each of these six transactions involved the cashing of an Exemplar check payable to cash.

Mr. McCaskill was tried before a jury.[3] He moved for a judgment of acquittal at the conclusion of the government's case, arguing that there was insufficient evidence that he knew the Lawrence and Trident checks were stolen. The district court denied the motion, and the jury convicted McCaskill on all counts. The district court ordered restitution of the $600,000 and imposed a sentence of imprisonment for 33 months plus three years of supervised release. This appeal followed.

---

**2.** Mr. McCaskill did not testify at trial, but his attorney stated in closing argument that "Andrew McCaskill deposit[ed] the two checks in his checking account...." That statement was consistent with the testimony of two bank tellers, as well as with other evidence tending to show that Mr. McCaskill handled all, or nearly all, of Exemplar's banking. At sentencing, Mr. McCaskill admitted "that [he] did deposit those checks."

**3.** Luther McCaskill was tried separately.

## II

Mr. McCaskill argues first that there was insufficient evidence to convict him of any of the charges in the indictment. His argument must fail if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We are satisfied that the evidence was sufficient under *Jackson.*

■ With respect to the charge of conspiracy, Mr. McCaskill contends that there was no evidence of an agreement between him and his brother relating to the forged checks.[4] But a conspiracy conviction does not require proof of an express agreement; evidence of a "tacit or mutual understanding" is sufficient. *United States v. Sanchez,* 928 F.2d 1450, 1457 (6th Cir.1991); see, *e.g., United States v. Crossley,* 224 F.3d 847, 856 (6th Cir.2000). Such an understanding may be inferred from the defendant's actions and the surrounding circumstances. See, *e.g., United States v. Milligan,* 17 F.3d 177, 183 (6th Cir.), *cert. denied,* 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994); *United States v. Christian,* 786 F.2d 203, 211 (6th Cir.1986). Here there was evidence that Andrew McCaskill deposited and drew upon the checks, despite his never having done business with the companies that purportedly issued them. There was also evidence that Luther McCaskill, if he did not acquire the checks, at least assumed responsibility for

explaining their acquisition to investigators. The evidence is thus sufficient to support an inference that the brothers knew the checks to be fraudulent but agreed to pass them off as legitimate.

■ With respect to the other charges against him, Mr. McCaskill contends that there was insufficient evidence that he knew the checks were forged. But the verdict is supported by evidence that McCaskill deposited the checks and withdrew the funds when Exemplar had never done business with Lawrence Abstract Company or Trident Land Transfer Company.

Notwithstanding his concession at trial that it was he who deposited the checks, Mr. McCaskill now argues that there was insufficient evidence of his having done so. The argument would be unpersuasive even without a waiver. The bank teller who handled the $200,000 deposit testified that she dealt only with Andrew McCaskill, and the teller who handled the $400,000 deposit, without remembering who made the deposit, suggested that she typically dealt with Andrew McCaskill. In conjunction with other evidence that Mr. McCaskill handled Exemplar's banking—he opened its account and he signed all of its checks—this testimony was sufficient to enable a rational jury to find that McCaskill deposited the checks.[5]

A rational jury could also find that Mr. McCaskill knew his company had not done business with either of the companies that supposedly issued the forged checks. McCaskill was Exemplar's chief executive

---

4. The government says that Mr. McCaskill waived this argument by basing his Rule 29 motion solely on insufficiency of the evidence of *knowledge,* and not on insufficiency of the evidence of *other elements* of the charged offenses. We think McCaskill's argument clearly fails on the merits, and we shall pretermit the waiver question.

5. Mr. McCaskill argues also that there was insufficient evidence of his signing the six Exemplar checks to cash that were charged in the indictment as unlawful monetary transactions. But the checks all bear the signature "Andrew McCaskill," and McCaskill never contested that evidence at trial.

officer. It was his company. He filed the certificate stating that he—no one else— was doing business under the name "Exemplar System Solutions." It was he who applied for an Internal Revenue Service employer identification number, he who signed Exemplar's articles of incorporation,[6] and he who wrote all the checks on Exemplar's account. From this evidence, the jury could conclude that McCaskill had knowledge of Exemplar's operations generally and that he knew, in particular, that Exemplar had not sold computers worth $600,000 to abstract and title companies in New Jersey.

Considering all of the evidence together, we think a rational jury could easily find that Mr. McCaskill knew the checks to be fraudulent. The theory presented by the defense at trial—that Luther McCaskill might have convinced his brother that the checks were a legitimate loan from Mr. Mattioli—was not credible. Andrew McCaskill formed Exemplar and ran it. Assuming that he assigned Luther McCaskill the task of arranging financing—an assumption that finds little, if any, support in the evidence—he was not likely to accept at face value the story that two companies with which Mr. Mattioli, the supposed lender, had no apparent connection had put up the $600,000. And if he had no guilty knowledge, Andrew McCaskill was not likely to deplete his company's borrowed funds by writing multiple checks to cash, rather than, for example, using the money to purchase inventory. We are not persuaded by Mr. McCaskill's contention that the jury faced a "flip of the coin" as to whether he believed the checks to be a legitimate loan. The evidence supported a

finding, beyond a reasonable doubt, that Mr. McCaskill had no such belief.

### III

Next, Mr. McCaskill argues that the counts of the indictment charging him with possession and utterance of forged checks, bank fraud, and interstate transportation of forged checks were improperly multiplicitous. "Generally, an indictment may not charge a single criminal offense in several counts without offending the rule against 'multiplicity' and implicating the double jeopardy clause." *United States v. Hart,* 70 F.3d 854, 859 (6th Cir.1995) (internal quotation marks omitted), *cert. denied,* 517 U.S. 1127, 116 S.Ct. 1368, 134 L.Ed.2d 534 (1996).

We reject the argument on the ground that it was waived. An objection to an indictment based on multiplicity is waived if it is not raised before trial, see, *e.g., id.* at 859–60, and Mr. McCaskill simply did not raise this objection before trial.[7]

### IV

Mr. McCaskill argues finally that "rampant" prosecutorial misconduct deprived him of a fair trial. Because he did not object to the purported misconduct at the time of trial, we review only for "plain error." See *United States v. Emuegbunam,* 268 F.3d 377, 406 (6th Cir.2001), *cert. denied,* 535 U.S. 977, 122 S.Ct. 1450, 152 L.Ed.2d 392 (2002). We must thus determine whether any obvious error occurred in the district court that affected Mr. McCaskill's substantial rights, and wheth-

6. The only other incorporator, Dadra Dukes, appears not to have been involved in the business of Exemplar System Solutions.

7. Even if the multiplicity argument had been successfully raised, it would not have short-

ened the terms of imprisonment and supervised release. Mr. McCaskill received the same sentence on each count of the indictment, with all sentences to run concurrently.

er it "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

Having examined each of the points raised by Mr. McCaskill, including several so obviously lacking in merit that we shall not discuss them here, we are not persuaded that there was any obvious error. To warrant reversal of a conviction, a prosecutor's statements must have been both improper and flagrant. See, *e.g., United States v. Tocco,* 200 F.3d 401, 420–21 (6th Cir.2000). The court "will not overturn a verdict unless the prosecutorial misconduct is 'so pronounced and persistent that it permeate[d] the entire atmosphere of the trial, . . . or so gross as probably to prejudice the defendant.'" *Id.* at 421 (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.), *cert. denied,* 522 U.S. 1001, 118 S.Ct. 572, 139 L.Ed.2d 411 (1997)).

■ Contrary to Mr. McCaskill's contention, there was nothing improper about the prosecutor's opening statement. The prosecutor merely summarized what he expected the evidence to show—and, as it turned out, his summary closely foreshadowed the evidence that was in fact presented to the jury. For example, the prosecutor's statement that "George Mattioli didn't have [$600,000] to loan to anyone"—one of the statements about which Mr. McCaskill complains—properly anticipated actual testimony that Mr. Mattioli "did not have enough money to pay the bills that he had."

■ Although Mr. McCaskill asserts that the prosecutor elicited "obvious hearsay" in the form of statements attributed to Luther McCaskill, the statements in question were not hearsay. They concerned the purported loan from George Mattioli to Exemplar and were not offered to prove the truth of the matter asserted— *i.e.,* that the stolen checks were the proceeds of such a loan. See Fed.R.Evid.

801(c). Moreover, the statements were made by a coconspirator, Luther McCaskill, in furtherance of the conspiracy. See Fed.R.Evid. 801(d)(2)(E), which excludes such statements from the definition of hearsay. To elicit testimoney about these statements was not improper.

■ Like his opening statement, the prosecutor's closing argument appears largely unexceptionable. Mr. McCaskill complains that the prosecutor prefaced certain statements with the phrase "we know." The prosecutor did so, however, only when referring to evidence that the jury had heard; he did not imply that he had personal knowledge of facts unknown to the jury. Mr. McCaskill also complains that the prosecutor's illustration of the concept of "deliberate ignorance," involving a genuine Rolex watch purchased on the street for $50, was improper. But the Rolex example merely illustrated the principle that ignorance in the face of what is obvious can satisfy the "knowledge" element of a crime. We do not see how use of this example could have unfairly prejudiced Mr. McCaskill.

■ Finally, Mr. McCaskill argues that the prosecutor improperly commented on his decision not to testify. This argument is based largely on the prosecutor's pointing out that certain facts were not disputed. But those facts—that the checks were stolen and forged, that McCaskill deposited the checks, and that McCaskill withdrew the proceeds—truly were not contested at trial. Indeed, Mr. McCaskill's own attorney stated in closing that "all of the known facts in this case, all of Andrew McCaskill's actions that we know he took, they are not disputed." The prosecutor was entitled to narrow the issues for the jury by noting that certain facts were undisputed.

■ We are somewhat troubled by the prosecutor's statement that Mr. McCaskill "can offer no innocent explanation" for his possession of the stolen checks. However, this statement was made during rebuttal argument, and we think it is fairly read as a comment on the defense attorney's attempt, in his closing argument, to establish that Mr. McCaskill had no knowledge that the checks were stolen. We cannot say that the statement was "manifestly intended by the prosecutor as a comment on the defendant's failure to testify" or was "of such a character that the jury would naturally and reasonably take" it as such. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir.2000) (internal quotation marks omitted), *cert. denied*, 533 U.S. 941, 121 S.Ct. 2577, 150 L.Ed.2d 739 (2001).

Even if one or more of the prosecutor's statements could be considered improper, we are satisfied that they were not "so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial, . . . or so gross as probably to prejudice the defendant." *Tocco*, 200 F.3d at 421 (internal quotation marks omitted). We are further satisfied that if there was an error and if the error was obvious, it did not "seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Emuegbunam*, 268 F.3d at 406.

AFFIRMED.