**Wilbur C. KELLER, Petitioner–Appellant,**

v.

**Margaret BAGLEY, Warden, Respondent–Appellee.**

No. 02–3249.

United States Court of Appeals, Sixth Circuit.

Nov. 13, 2003.

David H. Bodiker and Theresa G. Haire, Public Defender's Office, Ohio Public Defender Commission, Columbus, OH, for Petitioner–Appellant.

Bruce D. Horrigan, Corrections Litigation Section, Cleveland, OH, for Respondent–Appellee.

BEFORE: MERRITT, MOORE, and GILMAN, Circuit Judges.

MERRITT, Circuit Judge.

On April 10, 1999, an Ohio jury convicted the petitioner, Wilbur C. Keller, of one count of kidnaping and one count of gross sexual imposition. In a separate proceeding, the trial judge convicted Keller of the sexually violent predator specification contained in each count. Keller was then sentenced to a total of fifteen years to life

in prison. In his § 2254 habeas petition, Keller alleged prosecutorial misconduct, ineffective assistance of counsel, and denial of due process based on the admission of certain police testimony. The district court dismissed the petition. Only the ineffective assistance claim is before us on appeal. The sole issue is whether Keller was prejudiced by his attorney's failure to object to certain remarks made by the prosecutor during closing argument. We conclude that the state court judgment should not be set aside on grounds of ineffective assistance of counsel, and we therefore affirm.

Keller's arrest and conviction stem from an assault against a twelve-year-old girl as she walked home from a neighbor's house on the night of January 22, 1999, in Tiffin, Ohio. The young girl's attacker forcibly grabbed her from behind, lifted her off the ground, and dragged her several feet through her backyard, causing severe bruising about her head and face. The attacker repeatedly told the girl to be quiet. Once the two were behind the girl's house, the attacker managed to rub the girl's genitals through her clothes before she struggled free. The girl ran to her house, screaming and crying. The police were immediately summoned. The victim described her assailant as a short, stocky white male wearing a long dark coat and what looked like a hood. She also indicated that the attacker told her, "I want to touch your pussy," as well something about "going home." Officer Fabian of the Tiffin Police Department responded to the scene, and immediately discovered two fresh footprints in the mud, both of which appeared to be boot prints.

Approximately eighteen minutes after the police were dispatched, Officer McClure encountered Keller walking along the street approximately six blocks from the girl's residence. Keller was wearing a long dark coat, a baseball cap, and rubber boots. His jeans and coat were splattered with mud. Officer McClure recognized Keller and asked him what he was doing there. Officer McClure testified that it was unusual to see Keller "in that part of town." Keller responded vaguely, saying he was coming from "someplace" and going "somewhere." Upon further questioning, Keller said that he had been chased by three men, and that he "might have been hit in the cheek or face" in a fight. Keller could offer no details regarding the alleged fight, and when Officer McClure suggested that Keller was not in fact involved in a fight, Keller replied, "[I]f that's what you think, then that's fine with me." The officer also noticed that Keller was sweating profusely and smelled strongly of alcohol.

Shortly thereafter, the victim was brought by police car to Keller's location, whereupon officers asked Keller to say the words "I want to go home" while the victim listened. When asked if she recognized Keller's voice, she responded, "It sounds like him."

A police tracking dog led police through alleyways and down streets to a point only a few hundred feet from where officers were questioning Keller, but it dropped the trail upon being distracted by another dog's feces. On the way, the dog passed near a black knit cap on the ground. The cap was collected as possible evidence, but hairs found on it did not match Keller's hair.

A police detective made a plaster cast of two apparently fresh footprints found in the victim's yard. Because the prints were made in muddy ground and a light rain had been falling since the time of the attack, only one of the attempted casts yielded a usable specimen for comparison. A forensic expert testified that although comparison at the detail level was not possible due to the quality of the cast, the cast

matched the boot that Keller was wearing both in terms of tread design and size of the heel portion. Although the expert could not say that Keller's boot was the only boot that could have made the print "to the exclusion of all other boots," he reported that the boot could have made the print.

During the rebuttal phase of closing argument, the prosecuting attorney stated:

I wanna suggest you do this. Imagine if you have a child[,] a 12 year old daughter. And a person has been accused, as Mr. Keller has been. And this person that has been accused is your friend. Somebody you like. You care about. Because if it's somebody you don't care about it's easy to say, don't want him around my kids. Imagine it's somebody you care about, a friend of yours. And you, and you have the evidence that we have presented to you today and yesterday.

We have proven to you each and every one of these things. We have presented to you the testimony of the girl. All these police officers. Proven to you the boot is very similar, same tread, same size tread. Would you let that person near your 12 year old girl? If you can say, yes, then you vote not guilty. If you say, no, vote guilty.

(J.A. at 216–17.) Keller's attorney did not object to these remarks. The judge then instructed the jury on all relevant points, including the burden of proof and reasonable doubt. During deliberation, the jury twice indicated to the trial judge that it was having difficulty reaching a unanimous decision. Ultimately, after sixteen hours of deliberation, the jury returned a guilty verdict on both counts. On direct appeal to the Ohio Court of Appeals, Keller asserted claims of both prosecutorial misconduct and ineffective assistance of counsel predicated on the above-quoted remarks.

He argued that the prosecutors remarks were so inflammatory and prejudicial that they infected the entire trial, rendering the resulting conviction a denial of due process, and further that his attorney's failure to object to the remarks constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Because trial counsel did not object to the statements, the state appellate court reviewed Keller's prosecutorial misconduct claim for plain error only, concluding without discussion that no such error occurred. (J.A. at 137.) Turning to Keller's related claim of ineffective assistance of counsel, the state appellate court cited *Strickland* and stated, "[I]n order to demonstrate prejudice, an appellant must show that a reasonable probability exists that the result of the trial would have been different had it not been for counsel's mistakes." (*Id.* at 138.) Without deciding whether counsel's failure to object to the prosecutor's argument constituted deficient performance, the court summarily concluded that Keller could not satisfy the prejudice prong of *Strickland. See Strickland,* 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed.").

In his § 2254 petition, Keller again asserted the interrelated claims of prosecutorial misconduct and ineffective assistance of counsel. In analyzing Keller's procedurally defaulted claim of prosecutorial misconduct, the district court concluded that the prosecutor's remarks were improper, but that the remarks were not so egregious that they infected the entire trial to the level of a due process violation. *See Simpson v. Jones,* 238 F.3d 399, 409 (6th Cir.2000); *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.1997); *United States v. Carroll,* 26 F.3d 1380, 1385 (6th Cir.

1994). Regarding Keller's separate claim of ineffective assistance of counsel, the district court concluded that counsel's failure to object to the prosecutor's improper argument constituted deficient performance, but agreed with the Ohio Court of Appeals that Keller had failed to demonstrate prejudice under *Strickland* for the same reasons that it would deny Keller's prosecutorial misconduct claim on the merits.

To prevail on a claim of ineffective assistance of counsel, Keller must show that: (1) his trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687; *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir.2002). The only issue before us for review is the district court's legal conclusion that Keller failed to show that he was prejudiced by trial counsel's deficient performance. The district court made no credibility determination or other apparent finding of fact; its decision was based upon the transcript of Keller's trial. As such, it is reviewed *de novo*. See *Perkins v. LeCureux*, 58 F.3d 214, 218 (6th Cir.1995).

To establish prejudice under *Strickland*, Keller must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.... [A]nd not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. In a case such as this, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. We

are concerned with whether the result of Keller's trial is fundamentally "unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696.

Finally, because the Antiterrorism and Effective Death Penalty Act of 1996 applies to Keller's petition, we must consider Keller's challenge within the more limited assessment of whether the state court's application of *Strickland* to the facts of this case resulted in a decision that was contrary to, or involved an objectively unreasonable application of, relevant Supreme Court precedent. See *Williams v. Taylor*, 529 U.S. 362, 405, 410–11, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d)(1)-(2).

We find that the Ohio Court of Appeal's conclusion that Keller was not prejudiced by counsel's failure to object was an objectively reasonable application of *Strickland*. While we might agree that the evidence of Keller's guilt is not "overwhelming," the jury's verdict is amply supported by the totality of the evidence before it. See *Strickland*, 466 U.S. at 695 (instructing that the court "must consider the totality of the evidence" before the jury). Within minutes of the attack, Keller was found walking the nearby streets, wearing wet and muddy clothes matching the victim's description in many material respects, wearing muddy boots with the same heel size and tread style as the boot of the attacker, and unable to give a coherent account for his presence in that area. Also within minutes of the attack, the victim was able to identify Keller's voice as sounding like the man who attacked her. A police tracking dog followed the attacker's trail to a place within sight of Keller, where the dog became distracted and dropped the trail. The boot print evidence is particularly persuasive. It seems highly unlikely that someone other than Keller

would have left, in the vicinity of the attack, a fresh, muddy boot print of the same heel size and tread design as the boots Keller was wearing that night.

A thorough review of the trial record further reveals that trial counsel performed ably throughout the proceeding, including successfully arguing against the introduction at trial of evidence of Keller's prior sexual assaults for the purported purpose of proving identity. The admission of this "other crimes" evidence probably would have been devastating for his defense of mistaken identity. At closing argument, Keller's attorney repeatedly invoked the state's burden of proving every element beyond a reasonable doubt, mentioning the standard no fewer than twenty times in seventeen pages of argument in which he carefully tested each piece of evidence against that standard and systematically reminded jurors of weaknesses brought out by defense counsel in cross-examination. Although the prosecutor's improper argument took place in rebuttal, leaving defense counsel no opportunity to respond, the trial court instructed the jury on reasonable doubt and the state's burden in both the preliminary instructions and the final instructions. On both occasions, the court emphasized that statements by counsel are not evidence. In the final charge to the jury, the court further instructed, "You decide the disputed facts and the Court provides the instructions of law. It is your sworn duty to accept these instructions and to apply the law as it is given to you." (Trial Tr., Vol. III, at 497.)

In determining whether attorney error resulted in prejudice, we presume that the jury acted according to law. *Strickland,* 466 U.S. at 694; *id.* at 695 ("The assessment of prejudice should proceed on the assumption that the decision maker is reasonably, conscientiously, and impartially applying the standards that govern the decision."). Given the evidence presented, our judgment that counsel's performance was otherwise professional and capable throughout the proceedings, and the court's proper instructions regarding the prosecution's burden of proof and the jury's duty to accept the court's instruction, we are confident that Keller's trial as a whole was a fundamentally fair and reliable adversarial process. As a result, we cannot say that counsel's failure to object to the prosecutor's improper closing argument has undermined our confidence in the outcome of the trial.

In sum, the state court's conclusion that Keller was not deprived of his constitutional right to the effective assistance of counsel was objectively reasonable. We therefore **AFFIRM** the district court's dismissal of the petition.

MOORE, Circuit Judge, dissenting.

I believe that a conditional writ of habeas corpus should be granted on the ground of ineffective assistance of counsel and respectfully dissent. The prosecutor blatantly misstated the law when he said in rebuttal, "Would you let that person near your 12 year old girl? If you can say, yes, then you vote not guilty. If you say, no, vote guilty." This is a far easier standard than the "beyond a reasonable doubt" standard required by law. Any reasonable juror would not want a person suspected of and arrested for kidnapping and gross sexual imposition of a twelve-year-old girl to be near the juror's young daughter and would convict under the prosecutor's standard. The trial counsel failed to object to the prosecutor's fundamentally incorrect statement, and the trial judge did not instruct the jury to disregard it.

The jury deliberated for sixteen hours and twice reported itself deadlocked. Under these circumstances it is unreasonable to conclude that the prosecutor's blatant misrepresentation of the standard of proof

required to convict did not demonstrate the prejudice required for an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

I further note that the state court of appeals misstated the standard for prejudice under *Strickland.* The state court of appeals ruled that "Appellant cannot demonstrate that the jury would have rendered an acquittal had defense counsel objected" to the prosecutor's statement in closing argument. This ruling is contrary to clearly established federal law in *Strickland,* which requires only a showing of "[a] *reasonable probability* that the result would have been different." 466 U.S. at 694 (emphasis added).

Under these circumstances, a conditional writ of habeas corpus should issue. I respectfully dissent.