**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 12a0047n.06

**No. 10-3374**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 13, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARK MUSSELMAN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| WARDEN, CHILLICOTHE | ) | OHIO |
| CORRECTIONAL INSTITUTION | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE: KENNEDY, MARTIN, and STRANCH, Circuit Judges.

**CORNELIA G. KENNEDY, Circuit Judge.** Petitioner-Appellant, Mark Musselman ("Petitioner" or "Musselman"), appeals the district court's denial of his petition for a writ of habeas corpus. Petitioner was convicted after a jury trial in an Ohio state court for his involvement in a fraudulent real estate scheme. An Ohio state appellate court upheld the conviction, and the Ohio Supreme Court declined to accept jurisdiction. Petitioner then filed this petition for a writ of habeas corpus with the United States District Court for the Southern District of Ohio. In his petition, Musselman presented three grounds for relief. First, he claimed that the State of Ohio (the "State") violated his right to a fair trial by failing to disclose before trial that the State possessed a false Indiana driver's license (the "ID") and that the non-disclosure (1) was a *Brady* violation; (2) amounted to prosecutorial misconduct; and (3) prevented his attorney from effectively representing him. Petitioner also argued that the Ohio trial court violated his Due Process rights by convicting

him of several allied offenses, and by failing to produce an adequate record. The district court denied the petition, and Petitioner appeals. Of the claims in Musselman's original petition, the district court granted a Certificate of Appealability ("COA") only with respect to Petitioner's claim that the Ohio state attorneys committed prosecutorial misconduct which violated his Constitutional right to a fair trial. (R. 15.) No further request was made to this Court. Because we agree with the Ohio state appellate court's finding that the prosecutor's failure to disclose the ID was harmless error, we AFFIRM.

## FACTUAL BACKGROUND

On December 17, 2005, a 59-count indictment was filed against Petitioner and his business partner, Mark Edwards ("Edwards"), charging them with several crimes, including engaging in a pattern of corrupt activity; aggravated theft by deception; forgery; and tampering with government records. The prosecution alleged that Petitioner and Edwards entered into an agreement to buy properties through their mortgage broker business using the names of people who had recently passed away. They would then falsify loan documents so that lenders would not only lend money to deceased persons, but also so that the loans would exceed the actual selling price of the properties.

Before the case proceeded to trial, Edwards pled guilty to all the charged offenses. Edwards eventually testified against Petitioner when the case was tried in front of a jury on April 20, 2007. Petitioner did not contest that the alleged real estate transactions took place. Rather, he claimed that Edwards alone had originated and executed the scheme, and that he was unaware of his former friend and long-time business associate's actions. Musselman argued that Edwards was the loan officer, who brought in clients and obtained the necessary documentation and information, while he was simply the loan processor, who worked with lenders to get the loans approved.

2

At trial, Petitioner testified in his own defense. He testified that he had no knowledge of the mortgage-lending scheme, and specifically denied committing any forgeries or taking part in any wrongdoing. At the heart of this appeal is the State's failure to disclose to Petitioner a fake Indiana driver's license the State claimed Musselman created using his picture and a false name. On cross-examination, Petitioner was asked if he had obtained an Indiana ID in another person's name. When he denied doing so, the prosecutor presented him with a copy of the ID in question. This was the first time Petitioner, or his counsel, learned that the State had that ID in its possession. An Ohio detective discovered the ID a day or two before Petitioner testified. On April 20, the jury returned a guilty verdict on all counts. The trial court imposed an aggregate 12-year sentence for all of the charges.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a federal court may not grant a writ of habeas corpus to a state prisoner regarding a claim that was adjudicated on the merits unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1), (2).

A decision is contrary to clearly established federal law "if the court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts." *Lorraine v. Coyle*, 291 F.3d 416, 421-22 (6th Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13

3

(2000)) (quotation marks and brackets omitted). An unreasonable application of federal law occurs when the state court identifies the proper legal principle but unreasonably applies it to the facts of the petitioner's case. *Id.* at 422 (quoting *Wiliiams*, 529 U.S. at 411-12). A state-court decision is not unreasonable simply because the federal court would have decided the case differently. The federal court must determine that the state court's decision is "an objectively unreasonable application of federal law." *Id.* (citing *Williams*, 529 U.S. at 410-12). A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). We review the district court's legal conclusions *de novo*, and its factual findings for clear error. *Greer v. Mitchell*, 264 F.3d 663, 671 (6th Cir. 2001).

## DISCUSSION

On appeal, Petitioner argues that the district court erred in holding that the State's failure to disclose the fake ID to him before cross-examining him about it deprived him of his Constitutional right to a fair trial. In his original petition to the district court, Musselman stylized this argument as having three sub-claims. First, he argued that under the United State Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecutor was required to disclose the ID. Next, he claimed that the non-disclosure constituted prosecutorial misconduct, which deprived him of his right to a fair trial. Furthermore, Petitioner argued that such misconduct prevented his attorney from giving him effective assistance of counsel. Of these three arguments, the district court only granted a COA with respect to Petitioner's prosecutorial misconduct claim.

Prosecutorial misconduct requires reversal if the misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005) (quoting *Pritchett v. Pitcher*, 117 F.3d

4

959, 964 (6th Cir. 1997)).  Even if the conduct is improper and universally condemned, this Court can provide relief only if the conduct renders "the entire trial fundamentally unfair."  *Id.* (quoting *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  In order to obtain relief, Petitioner must demonstrate that the prosecutor's conduct was both improper and prejudicial.  *Id.*  Petitioner is correct in pointing out that the Ohio Court of Appeals found that the State should have disclosed the ID under Ohio Criminal Rule 16.  *See State v. Musselman*, No. 22210, 2009 WL 242644, at *4 (Ohio Ct. App. Jan. 30, 2009).  As a result, we move on to decide whether that misconduct was sufficiently prejudicial to Petitioner, such that it violated his Due Process rights.

When assessing the prejudicial impact of prosecutorial misconduct, we use a four-factor test to determine whether the challenged conduct is flagrant:  (1) whether the conduct tended to mislead the jury; (2) whether the conduct was isolated or extensive; (3) whether the conduct was accidental or intentional; and (4) whether the evidence against the defendant was strong.  *Bates*, 402 F.3d at 641; *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (quoting *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)).

We agree with the district court, which adopted the Magistrate Judge's conclusion that Petitioner has failed to establish the alleged prosecutorial misconduct violated his constitutional rights.  (R. 7 at 12.)  The misconduct alleged was clearly one isolated instance.  Furthermore, although it seems that the State intentionally withheld disclosing the ID to Petitioner before cross-examining him, it did not mislead the jury.  Petitioner only argues that if the State had properly disclosed it he would have decided not to testify because the ID was so damaging to his credibility.

More importantly, however, we agree with the state appellate court's holding that "the error in the State's failure to disclose the evidence immediately was harmless beyond a reasonable doubt."

5

*Musselman*, 2009 WL 242644, at *5.  That court noted that prior to cross-examining Musselman with the ID in question, the State had presented evidence that Petitioner had created another fake ID, which investigators found in a briefcase that they received from Petitioner's wife.  *Id.*  Additionally, the jury was shown evidence suggesting that Petitioner had researched and obtained information on how to change one's identity.  *Id.*  The court also found that there was "a wealth of evidence showing that [Petitioner] had engaged in a pattern of fraud, forged numerous documents, and stolen hundreds of thousands of dollars."  *Id.*  Finally, the appellate court noted that to the extent that Petitioner claims the State's failure to disclose the ID ruined his credibility, "Musselman's credibility was tainted by his refusal to admit on cross examination that an obvious suicide note he sent to his wife was, in fact, a suicide note."  *Id.*  We see no reason to disagree with the Ohio appellate court's conclusion that any prosecutorial misconduct relating to the ID was harmless.

Although the Magistrate Judge explicitly refused to issue a COA regarding Petitioner's claim that the State's failure to disclose the ID constituted a *Brady* violation, both parties addressed this issue in their briefs.  In order to establish a *Brady* violation, a defendant must prove three things: (1) that the evidence at issue is favorable to the accused; (2) that the evidence was suppressed by the State; and (3) prejudice.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  The Magistrate Judge found that Petitioner had procedurally defaulted this claim by failing to raise it during the state proceedings, and also that the claim failed on its merits because the ID was not favorable to Petitioner.  (R. 7 at 7.)

We agree that the ID is not *Brady* material because it is clearly not favorable to Musselman.  In his appellate brief, Petitioner admitted that "[t]he Indiana ID does not favor Appellant."  (Pet'r. Br. 15.)  Indeed, Petitioner's entire argument is that the ID so thoroughly undermined his credibility

6

that if he had been aware that the State possessed it, he would not have testified.  Clearly, Petitioner cannot satisfy the first prong identified in *Strickler*.

## CONCLUSION

For the reasons stated, we AFFIRM.