Jeffery L. KNAPP, Petitioner,

v.

Harold WHITE, Respondent.

No. CIV. 02–40327.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 29, 2003.

Linda D. Ashford, Detroit, MI, for Jeffery Knapp, petitioner.

Jerrold E. Schrotenboer, Jackson County Prosecutor's Office, Jackson, MI, Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Harold White, respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Petitioner, a state prisoner currently confined at the Parnall Correctional Facility in Jackson, Michigan, has filed a petition for the writ of habeas corpus, 28 U.S.C. § 2254. Petitioner was convicted of second-degree criminal sexual conduct following a jury trial in the Jackson County Circuit Court in 1998 and sentenced as a second habitual offender to 60 to 270 months imprisonment. In his pleadings, Petitioner raises claims concerning the jury instructions, prosecutorial misconduct, the effectiveness of trial counsel, and cumulative error. For the reasons stated below, the Court will deny the petition for the writ of habeas corpus.

## I. FACTUAL BACKGROUND

The Michigan Court of Appeals set forth the relevant facts, which are presumed correct on habeas review, see *Monroe v. Smith,* 197 F.Supp.2d 753, 758 (E.D.Mich. 2001), as follows:

This case arises out of an incident that occurred during an alleged spiritual therapy class taught by defendant. In 1995, after receiving a masters degree in counseling and opening his own private counseling practice, defendant began taking courses in reiki, which, according to trial testimony, is an ancient healing art that involves "energy centers" in the body called chakras. Reiki practitioners use various hand positions to activate internal healing powers in their patients. The hand positions used by reiki therapists may involve, but do not require, physical contact with the person undergoing reiki therapy. Defendant passed his reiki classes and became a master reiki teacher and practitioner.

In June 1996, defendant visited the home of Dr. Julian Rowe. While there, he gave psychic readings to complainant's mother. Thereafter, complainant's mother underwent regular counseling with defendant. In September 1996, defendant taught a reiki class at Rowe's house in which complainant's mother participated. During the class, defendant demonstrated the various reiki hand positions and introduced one "kundalini"[1] hand position. According to trial testimony, kundalini involves the use of hand positions involving genitals to open energy points and to gain enlightenment through sexual energy. Defendant demonstrated the kundalini position on complainant's mother by placing one hand on her genitals and one hand on her stomach. He explained that the position helped direct the energy of the spine.

[1] According to defendant's mysticism "expert," "kundalini" is a Sanskrit term meaning "coiled serpent." The serpent is said to be a very powerful, creative energy source that sits at the base of the spine.

Complainant's mother attended other reiki classes defendant taught at Rowe's house. She practiced her hand positions on complainant, her fourteen-year-old son, but never used the kundalini position. After seeing positive changes in his mother, complainant became interested in learning reiki himself. Complainant wrote defendant a letter asking if he could attend a reiki class and defendant agreed to become complainant's reiki teacher.

In June 1997, complainant and his mother attended defendant's class at Rowe's house. After the morning class session, defendant asked complainant's mother if he could talk to complainant alone before the afternoon session. Defendant explained that he planned to teach some kundalini positions in the afternoon, and that he did not want complainant to giggle when he taught that portion of the class. Complainant's mother consented and defendant took complainant to an upstairs bedroom and closed the door. According to complainant, defendant first explained that he should not laugh during the afternoon session. Then, defendant told complainant, "Everyone's got nuts" and defendant then told complainant to feel defendant's testicles. Amazingly, complainant did so and defendant talked to complainant about sexual energy. Defendant then reclined on the bed and told complainant to place one hand on defendant's testicles and one hand on his stomach. Complainant did so and defendant then placed his hands on complainant to demonstrate the position.

Following the afternoon class, defendant asked complainant if he wanted to learn more and he again took complainant to an upstairs bedroom and closed the door. Defendant talked to complainant about reiki hand positions and then discussed male sexual energy. Defendant asked complainant to take off his pants and underwear and complainant did so. Defendant also removed his own pants and underwear. Defendant then manipulated his own testicles while explaining to complainant that the movement would create healthier semen. Defendant told complainant to try the technique and complainant complied by manipulating defendant's testicles. According to complainant, defendant then lay on the bed and began to masturbate while talking about sexual energy and reiki.[2] Complainant later told his mother what occurred with defendant and he then gave a full statement to the police.

[2] Defendant's former reiki teacher and prosecution witness, Kay Russell, testified that genital touching, masturbation, and discussions about sexual energy are improper in the study of reiki.

*People v. Knapp*, 244 Mich.App. 361, 365–67, 624 N.W.2d 227, 233–34 (2001) (footnotes in original). Petitioner's brief sets forth a detailed account of additional pertinent facts as presented at trial. This Court accepts the factual allegations contained in the habeas petition, insofar as they are consistent with the record, as Respondent has not disputed them. *See Bland v. Cal. Dep't. of Corrs.*, 20 F.3d 1469, 1474 (9th Cir.1994).

## II. PROCEDURAL BACKGROUND

Following his conviction and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting several claims of error, including those contained in the present petition. The Michigan Court of Appeals affirmed his conviction and sentence. *Knapp*, 244 Mich.App. at 390, 624 N.W.2d at 245. Petitioner filed an application for leave to appeal with the Supreme Court of Michigan raising the same claims, which was denied. *People v. Knapp*, 465 Mich. 934, 638 N.W.2d 754 (2001).

Petitioner filed the present habeas petition asserting that: (1) the trial court erred in instructing the jury on second-degree criminal sexual conduct; (2) the prosecutor committed misconduct (a) by introducing other acts evidence, (b) by making a civic duty argument, (c) by commenting on his right to counsel, (d) by presenting improper police expert opinion testimony, (e) by making speculative arguments, (f) by introducing hearsay state-

ments and asking Petitioner to comment on them, (g) by vouching for the victim, and (h) by arguing facts not in evidence; (3) trial counsel was ineffective (a) for failing to object to hearsay testimony, (b) for eliciting unfavorable evidence while questioning a witness, (c) for improperly questioning a witness, (d) for failing to object to prosecutorial argument and jury instructions, (e) for failing to object to other acts evidence, and (f) for eliciting evidence of Petitioner's prior conviction; and (4) that cumulative error denied him a fair trial. Respondent has filed an answer to the petition.

## III. LEGAL STANDARD

The standard for reviewing petitions for the writ of habeas corpus is provided for in 28 U.S.C. § 2254(d). This section states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 411–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Further, 28 U.S.C. § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. ANALYSIS OF JURY INSTRUCTION CLAIM

Petitioner first claims that he is entitled to habeas relief because the trial court erred in instructing the jury on second-degree criminal sexual conduct by stating that Petitioner "was in a position of authority over [the victim], that is, a teacher of reiki and used this authority to coerce [the victim] to submit to the sexual acts alleged."

The relevant portion of Michigan's criminal sexual conduct statute provides:

(1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists: . . .

(b) That other person is at least 13 but less than 16 years of age and any of the following: . . .

(iii) The actor is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

Mich. Comp. Laws § 750.520c(1)(b)(iii).

The Michigan Court of Appeals found that the trial court's instruction constituted plain error because it took an essential element of the offense away from the jury's determination. *See Knapp,* 244 Mich.App. at 375, 624 N.W.2d 227. The Court of Appeals, however, concluded that the error did not require reversal because there was ample evidence that Petitioner was in a position of authority over the victim. *See id.* at 375–76, 624 N.W.2d 227. The Court of Appeals also noted that Petitioner did not contest that he was in a position of authority at trial. *See id.* at 377 n. 5, 624 N.W.2d 227.

 In order for habeas relief to be warranted on the basis of an improper jury instruction, a petitioner must show that the challenged instruction was so in-

firm that it rendered the trial fundamentally unfair. *See Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court must determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (internal quotations omitted); *see also Austin v. Bell,* 126 F.3d 843, 846 (6th Cir.1997). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *Grant v. Rivers,* 920 F.Supp. 769, 784 (E.D.Mich. 1996) (Gadola, J.).

 Under the Due Process Clause of the Fourteenth Amendment, a defendant in a criminal case is protected against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which he is charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Nonetheless, the United States Supreme Court has held that "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *see also Mitchell v. Esparza,* —— U.S. ——, ——, 124 S.Ct. 7, 11, —— L.Ed.2d —— (2003). A petitioner's due process rights are implicated only when the omission of an element is an error greater than a harmless error. *Neder,* 527 U.S. at 9–10, 119 S.Ct. 1827; *California v. Roy,* 519 U.S. 2, 4, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (holding that a state trial court's failure to instruct the jury on an element of the crime was subject to harmless error analysis on habeas review); *see also Patterson v. Haskins,* 316 F.3d 596, 609 (6th Cir.2003). An error

is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

 The Court concludes that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. The record reveals that there was significant evidence presented at trial establishing that Petitioner was in a position of authority as the victim's teacher. Petitioner did not contest that he was in a position of authority at trial. In fact, he identified himself as a "master teacher" and admitted that he was instructing the victim .in reiki practices. The evidence also shows that Petitioner had taken the victim upstairs during a session to work with him individually at the time he committed the sexual misconduct. Rather than contesting his position of authority, Petitioner claimed that he did not have any sexual contact with the victim and that he did not coerce the victim into committing sexual acts. The jury, however, concluded otherwise based upon the evidence presented at trial. Petitioner has failed to show that the trial court's error in instructing the jury rendered his trial fundamentally unfair. It is clear beyond a reasonable doubt that a rational jury would have found him guilty absent the instructional error. Therefore, Petitioner is not entitled to habeas relief on his first claim.

## V. ANALYSIS OF PROSECUTORIAL CLAIMS

 Petitioner next claims that he is entitled to habeas relief due to various instances of prosecutorial misconduct. To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to

make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). When addressing claims of prosecutorial misconduct, the Court must first determine whether the challenged statements were indeed improper. *See United States v. Francis*, 170 F.3d 546, 549 (6th Cir.1999). Upon a finding of such impropriety, the Court must then "look to see if they were flagrant and warrant reversal." *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir.2000); *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial, or so gross as probably to prejudice the defendant." *Pritchett*, 117 F.3d at 964 (internal quotations omitted).

In this case, the Michigan Court of Appeals concluded that Petitioner was not entitled to relief on his prosecutorial misconduct claims because the alleged improprieties either lacked merit or resulted in harmless error. *See Knapp*, 244 Mich. App. at 381–85, 624 N.W.2d 227. The Michigan Court of Appeals did not clearly address whether the alleged errors constituted a denial of Petitioner's federal rights. Accordingly, this Court must conduct an independent review of the state court's decision. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000). The Court will address each of Petitioner's eight prosecutorial misconduct claims in turn.

## A. Other Acts Evidence

■ Petitioner first claims that the prosecutor engaged in misconduct by eliciting evidence of other bad acts, including his sexual preferences and practices with other adults. The Michigan Court of Appeals addressed these issues as matters of state evidentiary law and in the context of prosecutorial misconduct, concluding that the evidence was properly admitted and/or that the prosecutor's conduct was proper. As to the evidence of Petitioner's extramarital affairs and his prior criminal sexual conduct conviction, the Michigan Court of Appeals ruled as follows:

Defendant contends that the trial court improperly admitted evidence of defendant's extramarital affairs. We review the admission of evidence for an abuse of discretion. Not only did defendant fail to object at trial to any testimony regarding his affairs, thereby failing to preserve this issue for appeal, but defendant also raised the issue himself during his opening statement. In fact, defendant's theory throughout trial was that a jilted lover, Lisa Kolberg, conspired with complainant's mother to accuse defendant of molesting complainant. The trial record also reveals that defendant called Kolberg as a defense witness in order to further his conspiracy theory and he discussed the issue extensively during closing argument. Thus, any testimony elicited by the prosecutor regarding this issue was relevant to the issues raised by defendant. A defendant will not be heard to introduce and use evidence to sustain his theory at trial and then argue on appeal that the evidence was prejudicial and denied him a fair trial. Defendant's unpreserved claim, therefore, does not warrant reversal.

Defendant also contends that the trial court erred in admitting evidence of de-

fendant's prior sexual assault conviction. This Court reviews the admission of similar acts evidence for an abuse of discretion.... Pursuant to MRE 404(b), evidence of other crimes or wrongs "is not admissible to prove the character of a person in order to show action in conformity therewith." However, other acts evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." MRE 404(b). Other acts evidence must be offered for a proper purpose under the rule, the evidence must be relevant, and its probative value must not be substantially outweighed by unfair prejudice. Further, the trial court may, upon request, provide a limiting instruction to the jury.

The prosecutor moved to admit evidence that defendant engaged in the sexual penetration of a student in 1976, when defendant was a fifth-grade teacher in Illinois. The prosecutor argued that the evidence was probative of defendant's common scheme or plan in victimizing his students for his own sexual gratification. The prosecutor also argued that the evidence was relevant to show that defendant engaged in the sexual contact with complainant for a sexual purpose, an issue contested by defendant throughout the trial. In a lengthy opinion and order, the trial court ruled that the similar acts evidence was admissible and agreed to give a limiting instruction to the jury.

We find that, under the facts of this case, the trial court did not abuse its discretion in admitting the similar acts evidence.... The prosecutor offered the evidence to demonstrate a common plan by defendant in approaching and molesting his victims. Defendant's prior victim and complainant were both pubes-

cent boys at the time of the incidents, defendant was acting as a teacher when he approached his victims, defendant ingratiated himself with the families of both victims, he isolated both boys to initiate sexual contact and both assaults involved masturbation and discussions about masturbation. Thus, the evidence at issue was relevant to show defendant's common scheme or plan.

The similar acts evidence was relevant to show that defendant touched complainant for the purpose of his own sexual gratification. Defendant's purpose in approaching complainant was a material issue at trial because defendant maintained that he was merely showing complainant a therapy technique and denied that the incident involved his own sexual pleasure. Further, the evidence was relevant to rebut defendant's theory that Kolberg and complainant's mother fabricated the incidents. For these reasons, we also find that the probative value of the similar acts evidence is not substantially outweighed by the risk of unfair prejudice. And, although there was a twenty-year gap between defendant's prior conviction and this incident, the evidence was highly probative of defendant's common scheme because each step of defendant's prior conduct in approaching and isolating his victim mirrored his conduct in this case. Furthermore, the trial court gave an appropriate limiting instruction to the jury, admonishing it to consider the evidence only for its proper purpose.

Further, were we to find the evidence inadmissible, it is not likely that any error in the admission of this evidence was outcome determinative. Not only did complainant testify in detail about the incidents, defendant admitted that he (1) isolated complainant, (2) discussed masturbation with complainant, (3) asked complainant to take off his pants

and underwear, and (4) stimulated his own penis in front of complainant. Further, expert testimony showed that the "techniques" defendant claimed he was teaching complainant were not part of reiki training and were inappropriate. In short, the evidence of defendant's guilt was substantial and we cannot conclude that, absent the prior acts evidence, the outcome of this case would have been different.

*Knapp,* 244 Mich.App. at 377–81, 624 N.W.2d 227 (citations omitted). As to questions concerning Petitioner's sexual preference and his conduct in therapy sessions, the Michigan Court of Appeals ruled as follows:

We find no evidence in the record showing that the prosecutor injected the issue of defendant's homosexuality into the trial. Rather, defendant elicited testimony from his own marriage counselor regarding his sexual orientation. Further, ... defendant raised the issue of his extramarital relationship with Kolberg to pursue his theory that Kolberg conspired with complainant's mother to fabricate the charges in this case. Therefore, any details the prosecutor elicited about defendant's relationship with Kolberg were relevant to rebut defendant's theory at trial. It is disingenuous for defendant to now claim that the prosecutor engaged in misconduct by exploring an issue raised by defendant. With regard to other questions about defendant's conduct, defendant did not object when the prosecutor asked defendant about his behavior during therapy sessions with Kolberg's husband, Don McAvinchey. Defendant testified that he did not incorporate the touching of genitals into his therapy practice and, in an effort to rebut that testimony, the prosecutor simply asked defendant about a statement McAvinchey wrote regarding certain incidents that occurred during his therapy sessions with defen-

dant. Defendant responded by stating that any reference McAvinchey made to nudity, sexual contact, oral sex, and masturbation during his therapy sessions was a lie. The prosecutor elicited this testimony to rebut defendant's contention that complainant fabricated his story about all contact of a sexual nature. Further, the cross-examination was properly geared toward rebutting defendant's testimony that he never used improper methods in teaching his students or counseling his patients.

*Knapp,* 244 Mich.App. at 381 n. 6, 624 N.W.2d 227.

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision in this regard is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof. Testimony concerning Petitioner's extramarital affairs was relevant to issues raised by Petitioner as his theory of the case was that his former paramour, Lisa Kolberg, and the victim's mother conspired against him to make false accusations. Evidence of Petitioner's prior criminal sexual conduct conviction was properly admitted as evidence of motive, intent, and common scheme or plan. Similarly, Petitioner raised the issues of his sexual preferences and therapy practices at trial and the prosecutor merely responded to those matters. Petitioner has thus failed to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair. Therefore, Petitioner is not entitled to habeas relief on his first prosecutorial misconduct claim.

**B. Civic Duty Argument**

■ Petitioner next claims that the prosecutor made an improper civic duty argument by telling the jury that it had a duty to protect the victim the way the law eventually protected the previous victim

twenty years earlier. Generally, a prosecutor cannot make statements "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir.1991).

■ In this case, the Michigan Court of Appeals concluded that the prosecutor had not made an improper civic duty argument, stating:

> We also find that the prosecutor did not present an improper civic duty argument to the jury and, therefore, did not inject issues broader than defendant's guilt or innocence by presenting such an improper civic duty argument. During closing arguments, the prosecutor argued from the relevant facts and took pains to separate this case from the evidence of defendant's prior conviction. Further, the prosecutor did not persuade the jury to suspend their powers of judgment by asking them to protect complainant; the prosecutor merely responded to defendant's argument that the jury should not be wrong about their conviction. Generally, prosecutors are accorded great latitude regarding their arguments and conduct. Further, prosecutors are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case. Thus, we find no misconduct with regard to this issue.

*Knapp*, 244 Mich.App. at 381 n. 6, 624 N.W.2d 227 (internal quotations and citations omitted).

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. The prosecutor's comments about protecting the victim in this case were made in response to defense counsel's arguments and reflected the evidence presented at trial. Additionally, as discussed *supra*, the prosecutor's references to Petitioner's pri-

or conviction were appropriate. The prosecutor's arguments, while forceful, did not rise to the level of an improper civic duty argument. Further, the trial court's instruction to the jury that they must not let prejudice or sympathy influence their decision defeats Petitioner's claim that he was deprived of a fair trial because of an improper civic duty argument. *See, e.g., Cameron v. Pitcher*, No. 99–CV–74906–DT, 2001 WL 85893, at \*10 (E.D.Mich. Jan.4, 2001). Habeas relief is not warranted on this second prosecutorial misconduct claim.

### C. Comment on the Right to Silence

■ Petitioner also claims that the prosecutor improperly commented on his right to remain silent by eliciting testimony from a police officer that Petitioner requested counsel and invoked his right to silence following his arrest on his prior criminal sexual conduct conviction. The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." The United States Supreme Court has stated that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Consistent with *Miranda*, prosecutors may not comment on a defendant's post-arrest silence in their case in chief, on cross-examination, or in closing arguments. *Doyle v. Ohio*, 426 U.S. 610, 619–20, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir.2002).

The Michigan Court of Appeals discussed this claim as follows:

Defendant further claims that the prosecutor infringed on defendant's constitutional right to remain silent while questioning a police officer in this case, Officer Geoffrey Flohr. During cross-examination, defendant elicited testimony from Officer Flohr that, when defendant was arrested for sexual misconduct in Illinois, he waived extradition, consulted a lawyer, and "lawyered-up," meaning that he asserted his right to remain silent. During the prosecutor's redirect examination, she asked the meaning of "lawyered up." After Officer Flohr explained the term, the following exchange occurred:

> Prosecutor: So he chose not to say anything to you?
>
> Officer Flohr: Yeah.
>
> Prosecutor: He didn't say, no, I never did this?
>
> The Court: Well, Ms. Rezmierski (prosecutor)—
>
> Defense Counsel: That is patently improper.
>
> The Court: That is patently improper testimony. You're trying to elicit improper testimony. It's improper questioning. The jury will disregard that.
>
> Prosecutor: Your Honor, it's the People's position he opened the door.
>
> The Court: Ma'am, you heard me. The defendant has a right to remain silent. He's been provided with that right to remain silent as I advised you at the beginning. For her to attempt to breach that is entirely improper. One more comment and you are in contempt of court.

As the trial court recognized, it was improper for the prosecutor to question Flohr regarding defendant's invocation of his right to counsel during his prior arrest. Even though defendant raised the issue of his choice to remain silent after his arrest, this did not open the door for the prosecutor to elicit details about whether defendant denied the allegations against him.

Although the prosecutor's questions were improper, automatic reversal is not required for this nonstructural defect. Rather, we review the issue to determine if the beneficiary of the error can show that the error is harmless beyond a reasonable doubt. To make this showing, there must be no reasonable possibility that the error contributed to the conviction.

Here, Officer Flohr never answered the prosecutor's improper question and the trial court immediately issued a cautionary instruction to the jury. Under these circumstances, we find no possibility that any error with regard to defendant's right to remain silent contributed to his conviction, particularly because the trial court acted swiftly by issuing an appropriate cautionary instruction and because defendant testified fully about the events at trial.

*Knapp,* 244 Mich.App. at 383–84, 624 N.W.2d 227 (citations omitted).

This Court agrees and finds that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710; *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999) (harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error). As noted by the Michigan Court of Appeals, any error by the prosecutor was likely harmless because the officer never answered the prosecutor's improper ques-

tion and the trial court reprimanded the prosecutor and issued a cautionary instruction to the jury. Moreover, the prosecutor presented significant evidence of Petitioner's guilt, including the victim's testimony, as well as Petitioner's own admissions at trial. Given these circumstances, Petitioner has not shown that any error by the prosecutor had a substantial or injurious effect or influence upon the jury's verdict. Petitioner is thus not entitled to relief on this third prosecutorial misconduct claim.

### D. Police Expert Opinion Testimony

■ Petitioner further claims that the prosecutor erred in presenting police testimony that child victims often delay reporting sexual abuse. The Michigan Court of Appeals did not specifically address this claim, but apparently found that it lacked merit. *See Knapp*, 244 Mich.App. at 381, 624 N.W.2d 227. Having reviewed the matter, this Court concludes that the Michigan Court of Appeals' ruling is consistent with United States Supreme Court precedent and constitutes a reasonable application of federal law. Petitioner has not established that the prosecutor erred or that the admission of this evidence denied him a fundamentally fair trial. Under Michigan law, the police officer was properly allowed to testify that children often delay reporting sexual abuse based upon past experience in similar cases. *See, e.g., People v. Beckley*, 434 Mich. 691, 726–27, 456 N.W.2d 391, 406–07 (1990). Petitioner had a full opportunity to cross-examine the officer to challenge the basis for his opinion and to discredit that opinion. Relief is not warranted on this fourth prosecutorial misconduct claim.

### E. Speculative Argument

■ Additionally, Petitioner claims that the prosecutor improperly speculated that Petitioner was grooming the victim in this case for the same sexual activity as occurred with the prior victim twenty years earlier. Again, the Michigan Court of Appeals did not specifically address this claim, but presumably deemed it without merit. *See Knapp*, 244 Mich.App. at 381, 624 N.W.2d 227. This Court agrees that this claim lacks merit and finds that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. It is well-settled that a prosecutor may draw reasonable inferences from the evidence presented at trial. *See, e.g., Macias v. Makowski*, 291 F.3d 447, 452–53 (6th Cir.2002). Given the similarities between the present case and the prior case, the prosecutor's argument was a reasonable inference from the evidence at trial. Petitioner has not established that the prosecutor erred. Further, even if the argument was improper, Petitioner has not shown that the brief comment rendered his trial fundamentally unfair. Habeas relief is not warranted on this fifth prosecutorial misconduct claim.

### F. Hearsay Statements and Eliciting Opinion on Credibility

■ Petitioner next claims that the prosecutor erred in cross-examining him with hearsay in the form of a police statement from Ms. Kolberg's husband, Don McAvinchey, and asking Petitioner to comment on Mr. McAvinchey's credibility. Under Michigan law, a prosecutor may not ask the defendant to comment on the credibility of prosecution witnesses. *See People v. Buckey*, 424 Mich. 1, 17, 378 N.W.2d 432, 439–40 (1985).

The Michigan Court of Appeals addressed this issue as follows:

Defendant also says that the prosecutor improperly elicited testimony from defendant that Don McAvinchey was a liar. It is not proper for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses since a defen-

dant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact. Errors in this regard are reviewed under a harmless error analysis.

Although the prosecutor's question required defendant to call McAvinchey a liar, we do not find that defendant was harmed by the error. Defendant maintained during trial that complainant's mother and Kolberg, McAvinchey's wife, were liars and that they conspired to have defendant arrested. In light of defendant's consistent allegations in this regard, we do not find that defendant was harmed by questioning the veracity of one other witness. Moreover, defendant fails to articulate any way in which he was harmed by the prosecutor's question. Because any undue prejudice could have been cured by a timely objection and curative instruction, defendant's claim does not warrant reversal.

*Knapp*, 244 Mich.App. at 384–85, 624 N.W.2d 227 (internal quotations and citations omitted).

Having reviewed the matter, this Court concludes that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. Even if the prosecutor's questions were improper impeachment of Petitioner, any error was harmless under the standard set forth in *Brecht, supra.* Petitioner has failed to show how he was harmed by the prosecutor's improper question, particularly since his defense was that several witnesses were lying in favor of the prosecution. Further, as discussed *supra*, any error was rendered harmless by the strength of the case against Petitioner. *See Meade v. Lavigne*, 265 F.Supp.2d 849, 861 (E.D.Mich.2003). Relief is not warranted on this sixth prosecutorial misconduct claim.

### G. Vouching for Victim's Credibility

Petitioner also claims that the prosecutor improperly vouched for the victim's credibility by stating that he gave honest testimony and that the jury should be proud that he came forward. It is well-established that it is improper for a prosecutor to express personal beliefs and opinions concerning the credibility of a witness. *See United States v. Young*, 470 U.S. 1, 9–10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir.2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617–18 (6th Cir.2003).

The Michigan Court of Appeals considered this claim as follows:

Defendant contends that the prosecutor improperly vouched for the complainant's credibility. A prosecutor is prohibited from vouching for a witness' credibility or suggesting that the government has some special knowledge that a witness will testify truthfully. During her closing argument, the prosecutor stated:

Number one, that the Defendant intentionally made [complainant] touch his genitals or the clothing covering that area. And on that element, Ladies and Gentlemen, you have the word of [complainant]. You have his honest, painful, straightforward testimony about what this man made him do—and that is enough.

We find that the prosecutor's comment constituted improper vouching. The prosecutor should not have stated her opinion regarding complainant's honesty. However, defendant did not object to the misconduct and, therefore, appellate review is precluded unless a curative instruction could not have eliminated possible prejudice or failure to consider the issue would result in a miscarriage of justice. A prompt, curative instruction could have removed any taint the prosecutor's brief comment may have caused. Further, the trial court specifically instructed the jurors that it was their duty to determine the credibility of witnesses and that the lawyers' statements and arguments should not be considered evidence. Thus, even though the prosecutor's comment was improper, we do not find that it warrants reversal.

*Knapp,* 244 Mich.App. at 382–83, 624 N.W.2d 227 (internal quotations and citations omitted).

This Court agrees and concludes that the Michigan Court of Appeals' decision is consistent with federal law and constitutes a reasonable application thereof. While the prosecutor's comment was improper, it was brief and countered by the trial court's jury instructions. Petitioner has not established that the prosecutor's comment rendered his trial fundamentally unfair. Further, given the evidence against Petitioner, including his own testimony, any such error was harmless under the *Brecht* standard, *supra.* Relief is not warranted on this seventh prosecutorial misconduct claim

### H. Arguing Facts Not in Evidence

 Lastly, Petitioner claims that the prosecutor improperly argued facts not in evidence by stating that the victim was psychologically damaged and by reading Petitioner's confession from the prior criminal case. The Michigan Court of Appeals did not specifically discuss this claim, but presumably found that it lacked merit. *See Knapp,* 244 Mich.App. at 381, 624 N.W.2d 227. This Court finds that the Michigan Court of Appeals' ruling is consistent with United States Supreme Court precedent and constitutes a reasonable application of federal law. The prosecutor's comments on the victim's condition were reasonable inferences drawn from the evidence presented at trial and were thus appropriate. *See Macias,* 291 F.3d at 452–53. Additionally, Petitioner has not established that the prosecutor erred in reading the confession from the prior case given that evidence of Petitioner's conduct in that case was admissible to show intent, motive, plan, or scheme. Nonetheless, even if the prosecutor erred in this respect, Petitioner has not shown that the error rendered his trial fundamentally unfair so as to warrant habeas relief. Petitioner has thus failed to establish that he is entitled to habeas relief on any of his eight prosecutorial misconduct claims.

## VI. ANALYSIS OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Petitioner further asserts that he is entitled to habeas relief because defense counsel was ineffective in several ways. To establish that his counsel was ineffective, Petitioner must prove that (1) "counsel's performance was deficient" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A strong presumption exists that counsel afforded the defendant reasonable professional assistance. *Id.* at 689, 104 S.Ct. 2052. To satisfy the second prong of the *Strickland* test, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceed-

ing would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Therefore, "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken." *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir.2002). The Court will address each of Petitioner's six ineffective assistance claims seriatim.

### A. Failure to Object to Hearsay Testimony

██ Petitioner first alleges that counsel was ineffective for failing to object to the prosecutor's use of Mr. McAvinchey's written police statement during cross-examination. Applying the *Strickland* standard, the Michigan Court of Appeals concluded that counsel's conduct was a matter of sound trial strategy, stating:

> Defendant contends that defense counsel was ineffective for failing to object to the prosecutor's questions regarding McAvinchey's written police statement. However, defendant maintained throughout trial that the evidence against him was fabricated and was part of a conspiracy and that police participated in that conspiracy. Defendant specifically used McAvinchey's statements to show that certain allegations were not corroborated in the police report. Thus, defendant has not overcome the strong presumption that defense counsel's failure to object constituted sound trial strategy.

*Knapp,* 244 Mich.App. at 386 n. 7, 624 N.W.2d 227.

Having reviewed the record, this Court agrees and finds that the Michigan Court of Appeals' decision is consistent with *Strickland* and constitutes a reasonable application thereof. Defense counsel's strategy was that the victim's mother and Ms. Kolberg conspired against Petitioner to bring false charges of sexual misconduct through the victim. Defense counsel was able to use Mr. McAvinchey's police statement to discredit the allegations of those witnesses. Petitioner has not shown that defense counsel was deficient or that the chosen trial strategy was unreasonable given the facts of the case. Thus, Petitioner is not entitled to relief on his first ineffective assistance claim.

### B. Eliciting Unfavorable Evidence while Questioning a Witness

Petitioner next contends that counsel was ineffective for eliciting allegations about other victims during Ms. Kolberg's cross-examination. The Michigan Court of Appeals found that this action was part of a sound trial strategy. *See Knapp,* 244 Mich.App. at 386 n. 7, 624 N.W.2d 227. This Court concludes that the Michigan Court of Appeals' decision is consistent with *Strickland* and constitutes a reasonable application thereof. To support the defense theory that Ms. Kolberg and the victim's mother were fabricating the sexual abuse allegations, defense counsel reasonably questioned Ms. Kolberg about other purported victims to discredit her testimony by showing that no other victims had come forward. Petitioner has not rebutted the presumption that this course of action was sound trial strategy. Therefore, habeas relief is not warranted on this second ineffective assistance claim.

### C. Improper Questioning of a Witness

Petitioner also claims that counsel erred in questioning Officer Geoffrey Flohr about Dr. Julian Rowe being the subject of a criminal investigation for failing to report suspected child abuse. The Michigan Court of Appeals did not specifically discuss this claim but presumably found that this action was part of a sound trial strategy. *See Knapp,* 244 Mich.App. at 386 n. 7,

624 N.W.2d 227. Having considered the matter, this Court concludes that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application of federal law. It was reasonable for defense counsel to elicit such evidence to show that the police were overreaching in this case by subjecting a respected physician to criminal investigation. Moreover, such information could be used to bolster Dr. Rowe's credibility given that he was willing to testify on Petitioner's behalf despite being subject to criminal investigation and possible prosecution. Petitioner has thus failed to rebut the presumption that counsel's conduct in this regard was part of a reasonable trial strategy or to show that counsel's conduct was otherwise ineffective. Accordingly, Petitioner is not entitled to habeas relief on his third ineffective assistance claim.

### D. Failure to Object to Prosecutorial Argument and Jury Instructions

Petitioner further claims that counsel was ineffective for failing to object to prosecutorial argument and jury instructions on the position of authority element of the second-degree criminal sexual conduct charge. The Michigan Court of Appeals ruled on this claim as follows:

> Defendant contends that defense counsel was ineffective for failing to object to the arguments by the prosecutor and jury instructions regarding defendant's occupying a position of authority over complainant. The prosecutor was required to prove that defendant was in a position of authority pursuant to M.C.L. § 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii) and the prosecutor's arguments in that regard were proper. Therefore, any objection to those comments by defense counsel would have been frivolous. Obviously, defense counsel is not required to make frivolous or meritless motions or objections.

> Furthermore, while counsel should have objected to the improper jury instruction on "position of authority," defendant never disputed that he was in a position of authority over complainant and no reasonable juror would have concluded that he was not in a position of authority. To the contrary, the evidence was overwhelming that he was in a position of authority at the time the incidents took place. Thus, defendant cannot affirmatively demonstrate that but for his counsel's error in failing to object to the improper instruction, the outcome of the case would have been different. Therefore, any error by counsel in this regard does not require reversal.

*Knapp*, 244 Mich.App. at 386, 624 N.W.2d 227 (citations omitted).

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application of federal law. The prosecutor properly argued to the jury that Petitioner was in a position of authority over the victim at the time of the offense based upon the evidence presented at trial. Additionally, even though counsel erred in failing to object to the trial court's jury instruction, Petitioner has not shown that he was sufficiently prejudiced by counsel's performance. Petitioner never claimed that he was not in a position of authority at trial and the evidence overwhelmingly showed that he was in such a position as the victim's reiki teacher. Petitioner has thus failed to satisfy the prejudice prong of *Strickland*. Thus, Petitioner is not entitled to habeas relief on his fourth ineffective assistance claim.

### E. Failure to Object to Other Acts Evidence

Additionally, Petitioner contends that counsel was ineffective for failing to seek

exclusion of other acts evidence, including testimony concerning his sexual preferences and practices. The Michigan Court of Appeals decided this issue as follows:

Defendant also argues that defense counsel was ineffective for failing to object to references to pedophilia and for not filing a motion *in limine* to preclude evidence of defendant's homosexuality and references to other possible victims. Defense counsel elicited testimony from both defendant and his own therapist that defendant was not classified as a pedophile. The questions were part of defense counsel's attempt to separate defendant from pedophiles in order to argue that he was not a repeat offender. Moreover, defendant himself raised the issue of homosexuality in order to convince the jury that he did not possess homosexual tendencies. Defendant raised this issue as part of his trial strategy, to counter allegations that he touched complainant for his own sexual gratification. Further, in order to bolster his theory that Kolberg and complainant's mother fabricated the allegations in this case, defense counsel himself elicited testimony that no other victims ever came forward with claims against defendant.

*Knapp*, 244 Mich.App. at 386 n. 7, 624 N.W.2d 227.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application thereof. Defense counsel may have reasonably determined that introducing evidence on the issues of homosexuality and pedophilia was necessary to show that jury that Petitioner was neither a homosexual nor a pedophile and to refute the charge that Petitioner touched the victim improperly for his own sexual gratification. Defense counsel also reasonably emphasized that the allegations concerning other victims of abuse or improper practices were unfounded because none of the purported victims had come forward. Petitioner has not rebutted the presumption that defense counsel's conduct in this regard was sound trial strategy. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss*, 286 F.3d at 859. Habeas relief is not warranted on this fifth claim.

## F. Introduction of Prior Conviction and Sentence

Lastly, Petitioner claims that defense counsel was ineffective for introducing evidence of Petitioner's prior criminal sexual conduct conviction and sentence. The Michigan Court of Appeals concluded that this was a matter of sound trial strategy, stating:

Finally, defense counsel raised the issue of defendant's prior conviction to show that defendant would have admitted responsibility in this case, as he did in the last, if he had actually engaged in the alleged wrongful conduct. In addition, defendant introduced evidence of his probation and therapy to show that he has been rehabilitated. Again, defense counsel's actions constituted sound trial strategy. Defendant's claims that defense counsel was ineffective for the above reasons are, therefore, without merit.

*Knapp*, 244 Mich.App. at 386 n. 7, 624 N.W.2d 227.

 Having reviewed the matter, this Court finds that the Michigan Court of Appeals' decision is consistent with *Strickland* and constitutes a reasonable application thereof. Defense counsel may have reasonably determined that introduction of this evidence would be beneficial to Petitioner by showing that he would admit any improper conduct if it had occurred and by showing that he was rehabilitated. The fact that a strategy was ultimately unsuc-

cessful does not mean that counsel was ineffective. *See Moss,* 286 F.3d at 859. Petitioner has thus failed to establish that he is entitled to habeas relief on any of his six ineffective assistance of counsel claims.

## VII. ANALYSIS OF CUMULATIVE ERROR CLAIM

Finally, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial. The Michigan Court of Appeals rejected this claim because Petitioner had not established that the cumulative effect of the errors denied him a fair trial. The Court of Appeals found that evidence of Petitioner's guilt was substantial and that none of the claimed errors compromised his theory of the case. *See Knapp,* 244 Mich.App. at 387, 624 N.W.2d 227. Petitioner has not shown that this decision is contrary to United States Supreme Court precedent or that it constitutes an unreasonable application of federal law. Moreover, the United States Court of Appeals for the Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir.2002). Consequently, Petitioner is not entitled to habeas relief.

## VIII. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA with this Court within **TWENTY–ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) (*"We do*

*encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**

### *JUDGMENT*

The above entitled action having come before the Court on a petition for the writ of habeas corpus, 28 U.S.C. § 2254, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Petitioner is entitled to **NO RELIEF** and that this action be, and the same hereby is, **DISMISSED WITH PREJUDICE.**